**DIZARD & GETTY, INC., a corporation, Appellant,**

v.

**Alex WILEY, Trustee in Bankruptcy in the matter of Grant Corson Henry, Appellee.**

**No. 18015.**

United States Court of Appeals Ninth Circuit.

Oct. 24, 1963.

Allen, DeGarmo & Leedy, and Charles W. Butterfield, Seattle, Wash., for appellant.

Sidney C. Volinn, Seattle, Wash., for appellee.

Before CHAMBERS, HAMLEY and MERRILL, Circuit Judges.

CHAMBERS, Circuit Judge.

Dizard & Getty, Inc., a masonry contractor, performed work and furnished materials for Grant Corson Henry, a speculative builder who is now a bankrupt, on houses numbered "1" and "2" on Mercer Island in King County, Washington. For this Henry owed Dizard

and Getty (D & G) the respective unpaid sums of $1,280.24 and $1,334.96. For these sums, at one time at least, D & G had inchoate liens on the properties at sites 1 and 2.

We deal here with whether D & G has lost its security as against Wiley, Henry's trustee in bankruptcy. The referee, affirmed by the district court, has held the liens gone: that there is no security left.

Henry was adjudicated a bankrupt on or about May 6, 1960. The first meeting of creditors was May 24, 1960. The respective asserted liens for work and materials had been severally recorded theretofore in the appropriate recording office of King County, Washington, on March 29 and April 6, 1960. No steps were ever taken to formally foreclose the asserted liens and D & G never filed a secured claim as such in the bankruptcy. The failure to do so has been held fatal by the referee and the district court.

It appears that about August 1, 1960, the trustee found sales for several properties including the two in which D & G asserted an interest. Following a petition by the trustee, Order to Show Cause No. 1 was entered on August 1, 1960, requiring D & G, among others, to appear and show cause "Why the trustee should not sell, free and clear of any claim[s] of lien or encumbrance the respondent[s] may have therein, such claim[s] to be transferred to the proceeds of the sale, the validity, extent and rank of priority [of liens] to be determined herein on notice * * *."

D & G, although named as a respondent, made no objection or appearance with reference to order No. 1. The referee on August 9, 1960, entered order No. 2 or "Order on Order to Show Cause." This order, No. 2, ordered the sale and, in accordance with that which was proposed in order No. 1, said: "The claims of lien or encumbrance, if any there be, of each and all of said respondents to be transferred to the proceeds of sale herein, their validity, extent and relative rank of priority to be determined by *this court* at a hearing on due notice to all parties concerned." [Emphasis supplied.]

On February 28, 1961, Wiley, the trustee, had made his sales free of the liens and on that date he petitioned for orders to establish the validity and priority of the known lien claimants. In his petition, he listed the respective lien claims of D & G for $1,280.24 and $1,334.96 on parcels 1 and 2. And order No. 3, Order to Show Cause, was entered by the referee on February 28, 1960, the date the trustee filed his petition. This order recited that D & G was one of the lien claimants, and a hearing for determining the claims was set for March 21, 1961. In the interim, D & G filed its response to order No. 3, reporting the amount of its claims as listed hereinabove and the recording steps it had taken on its purported claims against parcels 1 and 2. The trustee asserted that both lien claims were not timely recorded in the King County recording office (within ninety days after completion of D & G's work) under Washington law [1] (and therefore void), that the claims had not been filed within six months after the first meeting of creditors as secured claims [2] under the bankruptcy law, and that D & G had lost all

1. R.C.W. 60.04.060. With reference to the filings of the liens in King County Auditor's office we have used the verb "record" and the words "recorded" and "recordings." We do this to distinguish from "filings" in the bankruptcy case.

2. Section 57 (11 U.S.C. § 93) provides in pertinent part:
"Proof and allowance of claims
"(a) A proof of claims shall consist of a statement, in writing and signed by a creditor, setting forth the claim; the consideration therefor; whether any and, if so, what securities are held therefor; and whether any and, if so, what payments have been made thereon; and that the claim is justly owing from the bankrupt to the creditor. A proof of claim filed in accordance with the requirements of this title, the General Orders of the Supreme Court, and the official forms, even though not verified under oath, shall con-

by not complying with the Washington state law[3] with a foreclosure within eight months after the recording. (The six months period would have expired November 24, 1960. The eight months period would have expired about a week later.)

On July 7, 1961, the referee ruled as to parcel 1 ($1,280.24) that D & G did not record the claim of lien within 90 days of the cessation of its work, taking the view that the last work done after a long intermission was not noteworthy and was a pretense. As to parcel 2, he ruled the recording was timely. But as to parcel 2 he disallowed D & G's claim of lien for the reason that the "claimant neither filed a claim in this proceeding nor started an action in the courts of the State of Washington within the time required by law." If the lien claim on parcel No. 1 was recorded in time, the reasoning on parcel No. 2 would apply to parcel No. 1.

▆▆ We affirm on the question of the timeliness of recording. This depends on the completion date under Washington state law. We do have trouble distinguishing the tag end work done on the two houses, but we have no transcript of the referee's hearing. And, if we did have one, it would still be he who heard the witnesses. And, out of that, he may have well concluded that the last work done on the first house was sham. We are in no position to say the ruling was clearly erroneous. At most the question would be a close one of the applicability of Washington law to whatever the full facts are and the district court, sitting in that state, is entitled to some intendments thereon.

But as to the ruling denying recovery on parcel 2, we view it entirely as presenting a question of the federal bankruptcy law. The ruling of the referee and the district court may have followed In re Warren, W.D.Wash., 192 F.Supp. 801.[4] There the district court relied on its reading of United States National Bank in Johnstown v. Chase National Bank, 331 U.S. 28, 67 S.Ct. 1041, 91 L.Ed. 1320, and Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645, for the statement that it was necessary for a lienholder to file a secured creditor's claim as such, within six months after the first meeting of creditors. This D & G has never done. It only filed its claim pursuant to the orders to show cause, and more than six months after the first meeting of creditors. However, we incline to the Eighth

---

stitute prima facie evidence of the validity and amount of the claim. * * *

"(c) Proofs of claim may, for the purpose of allowance, be filed by the claimants in the court of bankruptcy where the proceedings are pending or before the referee if the case has been referred. * * *

"(e) Claims of secured creditors and those who have priority may be temporarily allowed to enable such creditors to participate in the proceedings at creditors' meetings held prior to the determination of the value of their securities or priorities, but shall be thus temporarily allowed for such sums only as to the courts seem to be owing over and above the value of their securities or priorities. * * *

"(n) Except as otherwise provided in this title, all claims provable under this title, including all claims of the United States and of any State or any subdivision thereof, shall be proved and filed in the manner provided in this section.

Claims which are not filed within six months after the first date set for the first meeting of creditors shall not be allowed: * * * And provided further, That a claim arising in favor of a person by reason of the recovery by the trustee from such person of money or property, or the avoidance by the trustee of a lien held by such person, may be filed within thirty days from the date of such recovery or avoidance * * *."

3. R.C.W. 60.04.100 provides in pertinent part as follows:
"No lien created by this chapter binds the property subject to the lien for a longer period than eight calendar months after the claim has been filed unless an action be commenced in the proper court within that time to enforce such lien * * *."

4. There is very good argument that the rulings we make herein are consistent with the holdings of In re Warren, supra, and that we only violate the dicta thereof.

Circuit's views of the United States National Bank case as expressed in Clem v. Johnson, 185 F.2d 1011, cert. den. 341 U.S. 909, 71 S.Ct. 622, 95 L.Ed. 1346. Cf. DeLaney v. City and County of Denver, 10 Cir., 185 F.2d 246.

It is to be remembered that order No. 2 on August 9, 1960, said the claims of lien of respondents (this included D & G) " * * * their validity, extent and relative rank of priority to be determined by this court at a hearing on due notice to all parties concerned." (Order No. 1 had said the same thing in substance.)

█ Basically it is our judgment that ordinarily, if all a secured creditor wants to do is preserve his lien, giving up a right to share in other assets, the secured creditor can sit still without filing his secured claim.

We have not quoted from the Eighth Circuit's Clem case, because we think reference thereto is adequate. Much has been written as to the significance or non-significance of the Supreme Court's failure to grant certiorari, none of which we shall quote. However, if Clem is right, D & G's is an a fortiori case. And, Clem is so clear cut that if it had constituted a flouting of United States National Bank, supra, we think it would have been a most appropriate case for certiorari. However, we do not know. Certiorari is not our function. Certainly Clem was an important case in the business world.

█ As to the eight months for foreclosure under Washington law, under his order No. 2, the referee took away from the state court any possibility of its decreeing a foreclosure. What could a state court have acted upon? What would the complaint or the judgment have said? Should we still say that D & G was required to do something that makes no sense? Even though a res is in bankruptcy there is reason to still require the recording of a lien—and, if the res remains intact, there is often reason to require foreclosure proceedings. But it disappears when the res is converted to cash, is all in the hands of the trustee under such an order as we

had here. No one has questioned the validity of the referee's orders Nos. 1, 2 and 3. And, it may be said with some reason that the effect of order No. 2 was to freeze the status quo as of August 9, 1960, when the time for filing of a foreclosure action had not run. Thus, we think the Washington state time for foreclosure did not continue to run. We do not believe on the facts here that the bankruptcy law requires anything so foolish and incongruous as a "suit to enforce."

As to parcel No. 2, the district court's order on review is reversed for proceedings consistent herewith. As to parcel No. 1 it is affirmed.