POSNER, Circuit Judge.
 

 The facts, slightly simplified, are as follows. The Commodity Credit Corporation, a federal agency, made a farmer named Tarnow a loan secured by a lien on his crops and equipment. Tarnow went broke before the loan was repaid. He filed a petition for bankruptcy under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101
 
 et seq.,
 
 and the bankruptcy court fixed a deadline, the validity of which is not contested, for the filing of claims against the bankrupt estate. Although the Commodity Credit Corporation knew about the bankruptcy proceeding, it filed its claim against Tarnow two months after the deadline had passed. The bankruptcy judge not only disallowed the claim because it was late, but, for the same reason, declared the Corporation’s lien extinguished. The district court, 35 B.R. 1014, affirmed the bankruptcy judge’s order, and the Corporation has appealed the district court’s judgment to us. But it has limited its appeal to the question whether the lien has been extinguished; it does not contest the disallowance of its claim as untimely.
 

 The bankruptcy judge’s order ended an adversary proceeding, and so was appealable to the district court; and the district court’s order affirming the bankrupt
 
 *465
 
 cy judge was a final order appealable to us. See the versions of 28 U.S.C. §§ 1293 and 1334 made applicable to this case by the Bankruptcy Act of 1978, Pub.L. 95-598, tit. IV, § 405(c)(2), 92 Stat. 2685. (The current provisions, 28 U.S.C. §§ 158(a), (d), enacted last summer, carry the former ones forward with no changes relevant to this case.)
 

 A long line of cases, though none above the level of bankruptcy judges since the Bankruptcy Code was overhauled in 1978, allows a creditor with a loan secured by a lien on the assets of a debtor who becomes bankrupt before the loan is repaid to ignore the bankruptcy proceeding and look to the lien for the satisfaction of the debt. See
 
 Long v. Bullard,
 
 117 U.S. 617, 620-21, 6 S.Ct. 917, 918, 29 L.Ed. 1004 (1886);
 
 Louisville Joint Stock Land Bank v. Radford,
 
 295 U.S. 555, 582-83, 55 S.Ct. 854, 859-60, 79 L.Ed. 1593 (1935);
 
 United States Nat’l Bank v. Chase Nat’l Bank,
 
 331 U.S. 28, 33, 67 S.Ct. 1041, 1044, 91 L.Ed. 1320 (1947) (dictum);
 
 In re Woodmar Realty Co.,
 
 307 F.2d 591, 594-95 (7th Cir.1962);
 
 Dizard & Getty, Inc. v. Wiley,
 
 324 F.2d 77, 79-80 (9th Cir.1963);
 
 Clem v. Johnson,
 
 185 F.2d 1011, 1012-14 (8th Cir.1950);
 
 DeLaney v. City and County of Denver,
 
 185 F.2d 246, 251 (10th Cir.1950);
 
 In re Bain, 521
 
 F.2d 681, 685-86 (6th Cir.1975);
 
 In re Honaker,
 
 4 B.R. 415, 416 and n. 3 (Bankr.E.D.Mich.1980); cf.
 
 In re Rebuelta,
 
 27 B.R. 137, 138-39 (Bankr.N.D.Ga.1983);
 
 In re Hines,
 
 20 B.R. 44, 48 (Bankr.S.D.Ohio 1982). Of course if there is some doubt whether the collateral is adequate for this purpose the creditor may want to file a claim with the bankruptcy court, so that in the event the collateral falls short he will have a claim against the estate (though just as an unsecured creditor) for the shortfall. See 11 U.S.C. § 506(a). But unless the collateral is in the possession of the bankruptcy court (or trustee — but there was no trustee here), which it was not in this case, the secured creditor does not have to file a claim. See 1 Norton, Bankruptcy Law and Practice § 28.27, at p. 28-18 (1983). It would be no favor to either the debtor or the other creditors to force him to do so on pain of losing his lien; it would just mean (unless as here the creditor was careless, and forgot to file) adding another unsecured creditor to the list.
 

 The wrinkle here is that the secured creditor did file a claim. (This was true in
 
 Dizard & Getty
 
 also, but apparently only in response to an order to show cause why the secured creditor’s lien should not be voided; the court treated the case as one in which the secured creditor wanted to bypass the bankruptcy proceeding completely. See 324 F.2d at 79-80.) If the filing had been timely but the bankrupt or his (other) creditors had contested the claim on the ground that the loan had never been made, or that it had been completely repaid, or that repayment could not be enforced because the loan was usurious, and if the bankruptcy judge had agreed that the bankrupt had no legally enforceable obligation to the creditor and his decision was not disturbed on appeal, the lien would be extinguished by operation of the doctrine of collateral estoppel; the proceeding before the bankruptcy judge would have established facts and legal conclusions showing that the lien could not possibly be valid. We shall see that, since 1978, this possibility has been expressly recognized by the Bankruptcy Code. But it is not a possibility presented by this case. The Commodity Credit Corporation’s claim was rejected for no other reason than that it was late, and this ground of rejection does not call into question the validity of the lien — unless rejecting a claim, on whatever ground, automatically rejects the lien that secures it. As a matter of principle we would be very surprised if it did (we are even more surprised, however, that there are no cases dealing with the question). The destruction of a lien is a disproportionately severe sanction for a default that can hurt only the defaulter. Once the deadline for filing claims had passed, Tarnow and his (other) creditors did not have to worry that still other creditors might pop up later and try to establish a claim on the assets of the bankrupt estate; any late-filing creditors would be time-barred. They did have
 
 *466
 
 to worry (unless late filings really do extinguish liens) that Tarnow’s secured creditors might try to seize and sell the security; but we have seen that secured creditors are allowed to ignore the bankruptcy proceeding without endangering their liens.
 

 So the Corporation could not have been trying to pull a fast one by its late filing; in any event its delay hurt only itself; and in these circumstances we cannot see why so drastic a sanction as was decreed here was necessary to protect anybody’s interests. While no one wants bankruptcy proceedings to be cluttered up by tardy claims, the simple and effective method of discouraging them is to dismiss the claim (that is, the claim against the bankrupt estate, as distinct from the claim against the collateral itself), out of hand, because it is untimely — which was done here, and about which the Commodity Credit Corporation does not now complain. If an ordinary plaintiff files a suit barred by the statute of limitations, the sanction is dismissal; it is not to take away his property. And a lien is property. See, e.g.,
 
 United States v. Security Industrial Bank,
 
 459 U.S. 70, 76-77, 103 S.Ct. 407, 411, 74 L.Ed.2d 235 (1982).
 

 However, the relevant statutory language that was in effect during the proceedings in the bankruptcy court, and the commentary on that language by the leading treatise, see 3 Collier on Bankruptcy 11 506.07, at p. 506-49 (15th ed. 1984), provide some, though only superficial, support for Tarnow’s position. A provision added to the Bankruptcy Code in 1978, 11 U.S.C. § 506(d), provides that “to the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless — (1) a party in interest has not requested that the court determine and allow or disallow such claim under section 502 [regulating the allowance of claims against the bankrupt estate].” One purpose of section 506(d)(1) is simply to codify the rule of
 
 Long v. Bullard—which
 
 previously had been purely a judge-made rule of bankruptcy law — permitting liens to pass through bankruptcy unaffected. See H.R. Rep. No. 595, 95th Cong., 2d Sess. 357 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787; see also
 
 id.
 
 at 361; S.Rep. No. 989, 95th Cong., 2d Sess. 76 (1978); 3 Collier on Bankruptcy,
 
 supra,
 
 11 506.07, at p. 506-49. But, read literally, the statute also seems to say that if someone requests the bankruptcy court to disallow a claim, and the court does so, the lien that secures the claim is voided; and Tarnow did request the bankruptcy court to disallow the Commodity Credit Corporation’s claim, and the court did disallow it. But this is not the intended meaning. All that was sought to be accomplished was to allow the bankruptcy court to determine whether a creditor has a valid secured claim, and if he does not to make the lien — the security — fall with the claim. This makes perfectly good sense; if you do not have a good secured claim, you do not have a valid lien (security for the claim). But the Commodity Credit Corporation was not seeking confirmation of its status as a secured creditor; it was content to realize on its collateral outside the bankruptcy proceeding. All it wanted was to be an unsecured creditor for the amount by which Tarnow’s debt to it might exceed its collateral. And while Tarnow or other creditors may well have thought the Corporation’s lien invalid and may have wanted the bankruptcy judge to use his powers under section 506(d) to determine that it was invalid, the judge didn’t do this. The basis for disallowing the Corporation’s claim was not that the Corporation was not a genuine secured creditor of the bankrupt but that its claim against the bankrupt estate — that is, its claim to be an unsecured creditor for so much of Tarnow’s debt as could not be realized from the sale of the crops and equipment on which the Corporation had a lien — had been filed too late. “[A] party in interest may seek the allowance or disallowance of the claim
 
 and the court will then determine the validity of the lien.”
 
 1 Norton,
 
 supra,
 
 § 28.27, at p. 28-18 (emphasis added; footnote omitted). The validity of the lien was not determined in this case.
 

 There are two further if modest supports for our interpretation. First, the Senate version of section 506(d) had provided “that
 
 *467
 
 to the extent a secured claim is not allowed, its lien is void unless the holder had neither actual notice nor knowledge of the case_” S.Rep. No. 598,
 
 supra,
 
 at 68. This could have been read to mean that the lien would be extinguished whatever the basis for disallowing the claim. But Congress enacted the House version, see 124 Cong.Rec. 33997 (1978), which is less hospitable to such a reading. Second, in 1984 Congress enacted a new section 506(d)(2), replacing the former 506(d)(1), and the new section preserves the lien if the claim “is not an allowed secured claim due only to the failure of any entity to file a proof of such claim _” Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 93-353, § 448(b), 98 Stat. 374. The change was intended “to make clear that the failure of the secured creditor to file a proof of claim is not a basis for avoiding the lien of the secured creditor.” S.Rep. No. 65, 98th Cong., 1st Sess. 79 (1983). As there is still no explicit reference to the situation where a claim is filed — only late— maybe the amendment does no more than codify (or recodify) the long-established rule of the
 
 Long v. Bullard
 
 line of cases. But at least it deprives Tarnow of his anyway rather threadbare textual argument based on the former version of section 506(d) and on Collier’s brief and unillumi-nating commentary on that language — provided we are allowed to look to the legislative history of an amendment to illuminate the meaning of the original statute. We are — see, e.g.,
 
 Red Lion Broadcasting Co. v. FCC,
 
 395 U.S. 367, 380-81 and n. 8, 89 S.Ct. 1794, 1801 and n. 8, 23 L.Ed.2d 371 (1969)—though there are pitfalls to this procedure. If a legislature decides to change a statute, some of the legislators may wish to give its change retroactive force, by describing it on the floor or in a committee report as a merely “clarifying” change, though formally the change is only prospective and a majority of the legislature would not have voted to make it retroactive. But no one has suggested that this is what was going on when section 506(d) was amended last summer. The previous statutory language really was unclear, and the amendment merely brings it into phase with the logical implications of the
 
 Long v. Bullard
 
 line of cases, which we know Congress meant to approve when it first enacted section 506(d) in 1978.
 

 REVERSED AND REMANDED.