**In re Thomas Raymond WORK and Karen Rose Work, Debtors.**

**Thomas Raymond WORK and Karen Rose Work, Plaintiffs,**

**v.**

**The COUNTY OF DOUGLAS, In the State of Oregon, Defendants.**

**Bankruptcy No. 683–07140.**
**Adv. No. 85–0660.**

United States Bankruptcy Court,
D. Oregon.

March 19, 1986.

Barry L. Taub, Eugene, Or., for plaintiffs/debtors.

Paul Nolte, Roseburg, Or., for defendants.

## MEMORANDUM OPINION

ELIZABETH L. PERRIS, Bankruptcy Judge.

This matter arises upon cross motions for summary judgment. The parties have stipulated to the following facts.

The Plaintiffs are Chapter 13 debtors whose plan was confirmed on May 9, 1983. The Defendant, Douglas County, holds a real property tax lien pursuant to ORS 311.405, against the debtors' residence in the amount of $2,599.56 plus interest on the unpaid property taxes.

The debtors' plan provided for 100% payment of any claim of Douglas County entitled to priority under the Bankruptcy Code. Douglas County received notice of the filing of the petition and of the plan, but it did not file a proof of claim or in any way participate in the bankruptcy proceeding.

On July 24, 1984, the trustee submitted his final account and report to the Court stating that all payments under the plan had been made. On that basis a discharge was entered on August 20, 1984. (The Court takes judicial notice of this fact as it does not appear in the stipulation of the parties.) No payment was made on the real property taxes owing Douglas County.

## ISSUE

The sole issue before this Court is whether the County's lien was extinguished by its failure to file a proof of claim, by the confirmation of the plan, or by the entry of the discharge.

## LEGAL ANALYSIS

A. The Defendant did not lose its lien by failing to file a proof of claim.

It has long been held that secured creditors with valid pre-petition liens on the debtor's property may ignore the bankruptcy proceedings and look to the lien for

1. All statutory references are to the Bankruptcy

satisfaction of the debt. *Long v. Bullard,* 117 U.S. 617, 620–21, 6 S.Ct. 917, 918, 29 L.Ed. 1004 (1886); *Dizard & Getty v. Wiley,* 324 F.2d 77, 80 (9th Cir.1963). This judicial rule was codified in the form of § 506(d) of the Bankruptcy Code. *Matter of Tarnow,* 749 F.2d 464, 466 (7th Cir.1984).

Section 506(d)[1], as it read in 1983 when Plaintiff's Chapter 13 case was filed, stated:

> To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless (1) a party in interest has not requested that the court determine and allow or disallow such claim under § 502 of this title. * *.

The legislative history of § 506(d) explains that the purpose of § 506(d) is to permit "liens to pass through the bankruptcy case unaffected." H.R.Rep. No. 595, 95th Cong., 1st Sess. 357 (1977); cf. Senate Report No. 95–989 95th Cong., 2nd Sess. 68 (1978), U.S.Code & Admin.News 1978, pp. 5787, 5854, 6313.

In *Matter of Tarnow,* 749 F.2d 464 (7th Cir.1984), the Court of Appeals for the Seventh Circuit ruled, in a Chapter 11 case, that the lien of a secured creditor whose claim was disallowed because of late filing survives the bankruptcy unscathed. The Court ruled that the claim should have been treated as if it had never been filed. Since liens are a type of property, they cannot be summarily taken away because their holder fails to file a claim. 749 F.2d at 466. The Court based its ruling on § 506(d) and the *Long v. Bullard* line of cases.

Similarly, Douglas County's property right could not be affected by the County's failure to file a claim. By declining to participate in the bankruptcy, the County was exercising an option expressly reserved to it by § 506(d).

B. Confirmation of the debtors' plan did not terminate Defendant's lien.

The plan provided as follows:

Code (11 U.S.C.) unless otherwise indicated.

2. From the payments so received, the trustee shall make disbursements as follows:

(a) The expenses of administration required by 11 USC § 507(a)(1).

(b) Payments to secured creditors whose claims are duly proved and allowed as follows:

| Name | Amount Owing | Value of Security | Monthly Payment |
|------|-------|---------|---------|
| None | | | |

[The claims of each of the creditors listed above shall be allowed as a secured claim in the amount of the value of the security and will be paid in monthly installments as shown until the allowed secured claim together with interest upon the unpaid balance at the contract rate but not to exceed 1% per month has been paid. Secured creditors shall retain their liens until their allowed secured claims have been paid. The remainder of the amount owing shall be allowed as a general unsecured claim and be paid under the provisions of paragraph (d) of this paragraph].

(c) Debts entitled to priority under and in the order prescribed by § 507 of the Bankruptcy Code.

(d) From the balance remaining after the above payments, dividends to unsecured creditors whose claims are fully proved and allowed as follows: (State whether 100% extension or what percent is to be paid under a composition.) 10% Composition—*Except that priority creditor, Douglas County Assessment & Taxation to be paid at 100% extension.* (emphasis added)

In oral argument, counsel for the debtors argued that according to § 1327(c)[2], when the plan was confirmed all the property of

the estate vested in the debtors free and clear of any claim or interest of any creditor provided for by the plan. Debtors argue that their plan provided for payment to Douglas County, and as a consequence confirmation had the effect of revesting the property in the debtors free of the County's interest.

An entity may have a claim against a debtor upon which the debtor has a personal liability. An entity may have an interest in property of the debtor which does not constitute a claim upon which the debtor has a personal liability. For instance, where a debtor has acquired title to property subject to a lien securing a debt without assuming liability for the debt, the holder of the lien cannot enforce personal liability upon the debtor to pay the debt. Nevertheless, the holder of the lien has an interest in property of the debtor and the lien will remain on the property until paid either by the original obligor or his assignee. If the lien is not paid, the holder will have the right to apply the property toward satisfaction of the debt through foreclosure. The holder of the lien could not, however, recover any deficiency from the assignee.

Under Oregon law, a real property tax claim may only be asserted against the real property to which it relates. A debtor's obligation to pay Oregon real property taxes is not a personal liability. ORS 311.-405(1), (2) (1985). The interest of the Defendant, therefore, is confined to a lien upon the real property.

Section 1327 speaks of claims or interests. The two terms should not be construed to be synonymous. Each should be given meaning. § 101(4) defines "claim" as:

2. The version of 11 U.S.C. § 1327 in effect at the time the Court confirmed Plaintiffs' plan provides:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

Section 102(2) states:

"claim against the debtor" includes claim against property of the debtor.

The term "interest" is not defined by the Bankruptcy Code. If, for the purposes of § 1327(c), the term "claim" was meant not only to include claims against the debtor but also claims against property of the debtor, then use of the term "interest" would be superfulous. By use of the term "interest" it appears that the term "claim" was to have a more limited meaning than that used in § 102(2). It is appropriate that the Court determine in factual circumstances such as in the present case, that the term "claim" include those debts upon which the debtor has personal liability and the term "interest" cover claims against property of the debtor. The term "claim" would refer to debts which would be discharged under § 1328 and the term "interest" would refer to liens or interests in property which would be unaffected by a discharge under § 1328.

Section 1327(c) could have stated "property vesting in the debtor after confirmation is free and clear of any claim provided for by the plan and is free and clear of any interest provided for by the plan". This language would have the same meaning as the language actually used. Such a reading of the statute gives meaning to both the term "claim" and the term "interest".

■ Thus, under § 1327(c) if the plan provides for a "claim", the property vests free of such claim. Or, if a plan provides for an "interest", the property vests free of such interest. If the plan provides for a "claim" but does not provide for an "interest", the property vests free of the claim but not free of the interest—in this case the lien of the County.

■ In order for a claim or interest to be provided for by a plan, the plan must acknowledge the claim or interest and make explicit provision for the treatment of the claim or interest. *In re Gregory*, 19 B.R. 668, 8 B.C.D. 1309 (BAP 9th Cir.1982)[3]. Since Plaintiffs' plan made no provision for the Defendant's lien in their plan, the residence which vested in Plaintiffs after confirmation remains subject to Douglas County's lien.

Had the debtors desired to "provide for" the lien of the Defendant in their plan, they could have made provision therefore in paragraph 2(b). By adding the name of the Defendant to this paragraph they would have been providing that the trustee pay the debt and that the Defendant retain its lien until the amount owing upon the lien was paid. Such a provision would have been in compliance with § 1325(a)(5)(B).

In fact, what the debtors provided in their plan was that "... priority creditor, Douglas County Assessment & Taxation to be paid at 100%" in paragraph 2(d). That paragraph deals with allowed unsecured claims. Thus, the plan does not recognize that the Defendant had a lien, let alone provide for satisfaction of the lien.

While not of particular significance in this case, it should be pointed out that the debtors are incorrect in denominating the Defendant as a priority creditor. The real property tax claim at issue is not a priority claim because the only governmental claims entitled to priority are unsecured claims. § 507(a)(6). Real property tax claims are secured claims.

The debtors rely on two cases, *Matter of Willey*, 24 B.R. 369 (Bankr.E.D.Mich.1982)

---

3. *In re Gregory* involves construction of the phrase "provided for by the plan" in § 1328. Although the Code section involved is different, the use of the identical phrase in § 1327(c) makes the Court's holding in the *Gregory* case instructive in interpreting § 1327(c).

and *In re Pettit*, 18 B.R. 832 (Bankr.S.D. Ohio 1982), to support their argument. Neither case supports Plaintiffs' interpretation of § 1327(c).

*Matter of Willey* involved a motion for relief from stay filed by a secured creditor whose claim was treated under the plan as unsecured because his claim was filed after the deadline to file secured claims had passed.[4] The plan provided for 100% payment of the underlying debt. The debtor was making payments according to the plan and had not yet received a discharge. The Court denied the motion, holding that while the lien of the secured creditor remained in place, that lien could not be enforced during the life of the plan.

The case at hand differs from *Willey* in several respects. *Willey* involved a motion for relief from stay to enforce a lien whose underlying debt was in fact being paid according to the terms of the plan. No discharge had been entered. Our case involves an action to avoid a lien. The underlying debt has not been paid and a discharge has been entered. Clearly, the holding in *Willey* is not applicable to the issues in this case. In fact, *Willey* cuts squarely against the interpretation the debtors urge. The opinion contains the following statement. "The court is in full agreement with the proposition that during the course of the plan a secured creditor retains a lien against its collateral even where its claim is treated as unsecured." 24 B.R. at 371–72. Thus *Willey* does not lend support to the debtors' interpretation of § 1327(c).

*In re Pettit* also involved a secured claim that was treated an unsecured in the Chapter 13 plan.[5] The bankruptcy court held that the secured creditor's lien was voided by the confirmation of the plan which described the debt as unsecured. The Court reasoned that when a debt is provided for by the plan, the status of the debt is finally determined at confirmation and no subsequent judicial proceeding can redetermine that status. 18 B.R. at 834. The Court ruled that the effect of § 1327 in that situation was to force the creditor to rely on payment under the plan rather than upon its lien. The Court specifically premised its ruling, "upon the debtors fulfillment of the terms of their confirmed Chapter 13 plan." *Id.* It expressly made no finding as to whether the lien would be subject to a different treatment should the debtors fail to complete their Chapter 13 plan. 18 B.R. at 834. While this Court disagrees with the *Pettit* court's interpretation of the effect of confirmation, *Pettit* by its very terms does not apply to this case. The debtors herein failed to pay Douglas County through their plan. They could have assured payment to the County by filing a claim on its behalf. § 501(c).

In urging their interpretation of § 1327, the debtors are asking this Court to read § 506(d) out of the Bankruptcy Code.[6] Obviously this Court cannot do that. It would be anomalous to read § 1327(c) to allow a debtor to reap a windfall because of the failure of a creditor secured by a lien to file a claim. Other courts have reached this same conclusion. *In re Simmons*, 765 F.2d 547, 555 (5th Cir.1985) [ ("The reading of § 1327 urged by the debtor would have the debtor materially improve his financial position, by unencumbering [secured] assets through the simple expedient of passing his property through the estate. This result has little to recommend it." quoting *In re Honaker*, 4 B.R. 415, 417 (Bankr.E.D.

---

4. Under former Bankruptcy Rule 13–302(e)(1), a claim not filed in a timely manner would be treated as unsecured under the plan for purposes of voting and distribution.

5. See footnote 4 above.

6. The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 93–353 § 448(b), 98 stat. 374, amended § 506(d) in pertinent part to read:

> To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless ... (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under § 501 of this title.

This amendment has been held to clarify, rather than change the meaning of the previous wording. *In re Tarnow*, 749 F.2d 464 (7th Cir.1984).

Mich.1980))]. See also *In re Levine,* 45 B.R. 333 (Bankr.E.D.Ill.1984); *In re Rhoades,* 34 B.R. 168, 170 (Bankr.D.Vt. 1983).

C. The Debtors' discharge does not effect the Defendant's lien.

Section 1328(a) of the Bankruptcy Code provides that:

> (a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter [11 USCS §§ 1301 et seq.], the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title [11 USCS § 502], except any debt—
>
> (1) provided for under section 1322(b)(5) of this title [11 USCS § 1322(b)(5)]; or
>
> (2) of the kind specified in section 523(a)(5) of this title [11 USCS § 523(a)(5)]. (emphasis added)

■ This section has no application to the questions involved in this case. While the discharge terminated the debtors' personal liability upon pre-petition debts provided for by the plan, § 1328(a) does not purport to deal with liens upon property of a debtor. As previously noted, an entity may hold a lien upon property of a debtor securing a debt upon which the debtor has no personal liability. In this case, the debtors had no personal liability upon the tax claim of the Defendant prior to entry of the discharge. The entry of the discharge, therefore, in no way effected the relationship between the Defendant and the debtors or their property. The discharge does not effect the validity of the lien. *In re Hines,* 20 B.R. 44, 49 (Bankr.S.D.Ohio 1982).

The discharge of Plaintiffs' personal liability, if any, to Defendant does not effect the right of Defendant to enforce its lien against the debtors' real property once the automatic stay provided by § 362 terminated. 3 *Collier on Bankruptcy.* Paragraph 506.07.

For the reasons discussed above, Defendant's cross motion for summary judgment is granted and plaintiffs' motion for summary judgment is denied. This Memorandum Opinion shall constitute Findings of Fact and Conclusions of Law under Bankruptcy Rule 7052.