## JEFFERSON-PILOT LIFE INS. CO. v. THOMPSON

[98 N.C. App. 479 (1990)]

JEFFERSON-PILOT LIFE INSURANCE COMPANY v. JEAN M. THOMPSON, LAURA A. THOMPSON, SHERRILL A. THOMPSON, JOHN B. THOMPSON, TRACY J. THOMPSON, MARK S. THOMPSON, PATRICIA A. THOMPSON, AND BRANCH BANKING AND TRUST COMPANY

No. 894SC676

(Filed 15 May 1990)

**Bankruptcy § 7 (NCI3d)— life insurance policy—policy proceeds as security—not listed—discharged**

The trial court improperly granted summary judgment for BB&T and should have granted summary judgment for appellant Mrs. Thompson where plaintiff Jefferson-Pilot filed an interpleader action requesting that the court determine which of the defendant claimants was entitled to the proceeds of four life insurance policies issued on the life of Dr. John Thompson; the trial court granted partial summary judgment in favor of BB&T as to the proceeds of one of the policies; Dr. and Mrs. Thompson had signed an assignment in favor of BB&T providing that the policy was to be held as collateral security; Dr. and Mrs. Thompson had subsequently filed a Chapter 11 bankruptcy petition; and the Chapter 11 plan contains no specific references to the assignment in favor of BB&T. Although BB&T filed a proof of claim and was listed as a secured creditor, it failed to list as part of its security the potential proceeds of the life insurance policy on Dr. Thompson, the plan did not provide for continuing the lien on that policy, and the lien was therefore extinguished.

**Am Jur 2d, Bankruptcy §§ 22, 60, 241.**

APPEAL by defendant Jean M. Thompson from judgment entered 11 May 1989 by *Judge J. Milton Read, Jr.* in JONES County Superior Court. Heard in the Court of Appeals 9 January 1990.

Plaintiff filed this interpleader action requesting that the trial court determine which of the defendant claimants is entitled to the proceeds of four life insurance policies issued by plaintiff on the life of Dr. John Hargett Thompson. Dr. Thompson died on 8 July 1988. The trial court granted partial summary judgment in favor of Branch Banking and Trust Company (BB&T) and held that BB&T was entitled to the proceeds of one of the four policies. This policy, #2-541-561, was a $50,000 policy issued on 23 November

1975 which named as beneficiary Jean Monette Thompson, appellant here. The net proceeds from this policy are $41,369.43. An assignment in favor of BB&T, signed by Dr. and Mrs. Thompson and dated 11 November 1975, provides that "the Policy is to be held as collateral security for any and all liabilities of the undersigned, or any of them, to the Assignee, either now existing or that may hereafter arise between any of the undersigned and the Assignee." In June of 1985 Dr. and Mrs. Thompson filed a Chapter 11 bankruptcy petition. However, the Chapter 11 plan contains no specific reference to the assignment in favor of BB&T. Dr. and Mrs. Thompson's Chapter 11 plan was confirmed by the bankruptcy court on 22 August 1986. The order states that the debtors, Dr. and Mrs. Thompson, were released "from all dischargeable debts" except those provided for in the bankruptcy court's order, the debtors' plan or 11 U.S.C. § 1141(d).

Appellant and the living children of the deceased have competing claims on the proceeds of the three other policies, none of which are involved in this appeal. BB&T makes no claim against the proceeds of those policies.

The trial court granted summary judgment in favor of BB&T on its claim for the proceeds of the $50,000 insurance policy in spite of appellant's argument that BB&T's claim was extinguished by the bankruptcy proceeding. Appellant Jean M. Thompson appeals the entry of partial summary judgment for BB&T.

*Stubbs, Perdue, Chesnutt, Wheeler & Clemmons, by Gary H. Clemmons, for defendant-appellant Jean M. Thompson.*

*Ward and Smith, by William F. Hill and Mario E. Perez, for defendant-appellee Branch Banking and Trust Company.*

EAGLES, Judge.

The sole issue presented here is whether partial summary judgment in favor of BB&T was appropriate. Appellant argues that the order confirming the Thompson's bankruptcy plan is entitled to full faith and credit, and that confirmation of the plan destroyed any security or lien rights BB&T had in the insurance proceeds. Appellant points out that in Chapter 11 bankruptcy cases (as opposed to Chapter 7) confirmation of the plan of reorganization by the court extinguishes all pre-existing debts not explicitly provided for in the plan. 11 U.S.C. § 1141(d). BB&T argues that because

JEFFERSON-PILOT LIFE INS. CO. v. THOMPSON

[98 N.C. App. 479 (1990)]

neither the policy nor the assignment were brought to the attention of the bankruptcy court, the policy and assignment were not affected by the Chapter 11 proceedings. Additionally, BB&T argues that since it was the owner of the policy pursuant to the assignment, the policy was not property of the debtors at the time of the petition and was not affected by the bankruptcy court's confirmation of the plan. BB&T also argues that as a general rule a pre-existing lien survives a bankruptcy case; only the debtor's personal liability is extinguished. For the reasons stated below, we reverse and remand this case to the trial court for entry of judgment in favor of Mrs. Thompson.

In a Chapter 11 case, "[s]ubject to compliance with the requirements of due process under the Fifth Amendment, a confirmed plan of reorganization is binding upon every entity that holds a claim or interest even though a holder of a claim or interest is not scheduled, has not filed a claim, does not receive a distribution under the plan, or is not entitled to retain an interest under such plan." 5 L.P. King *Collier on Bankruptcy* ¶ 1141.01[1] at 1141-6 (15th ed. 1989). Here it is undisputed that BB&T had notice of the debtors' Chapter 11 proceeding.

Section 1141(a) of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.* (1978) (hereinafter the Code), states in pertinent part that "the provisions of a confirmed plan bind the debtor, . . . and any creditor, . . . whether or not the claim or interest of such creditor, . . . is impaired under the plan and whether or not such creditor, . . . has accepted the plan." The order of confirmation adopting the terms of the plan is a final judgment for purposes of *res judicata* on all matters relevant to the confirmation and is therefore binding on BB&T.

The binding effect of a confirmed Chapter 11 plan on liens has been the subject of extensive, though somewhat unsettled, case law. In *Minstar, Inc. v. Plastech Research, Inc. (In re Artic Enterprises, Inc.)*, 68 Bankr. 71 (D. Minn. 1986), although the creditor had a consensual lien on the debtor's property, its claim was treated as unsecured under the provisions of the confirmed Chapter 11 plan. Noting a split of authority, the district court held that the creditor's lien was dissolved because of the effect given to a confirmed plan by virtue of Code § 1141(c). The court stated that "[a]fter confirmation of a Chapter 11 plan, a creditor's lien rights are only those granted in the confirmed plan. A creditor no longer

can enforce its preconfirmation lien rights . . . ." *Id.* at 79, *quoting Board of County Comm'rs v. Coleman Am. Properties, Inc. (In re American Properties, Inc.)*, 30 Bankr. 239, 246 (Bankr. D. Kan. 1983). In addressing the binding effect of a confirmed plan, the court observed that "[i]n a Chapter 11 case, . . . the debtor and creditors naturally look to the plan of reorganization as the final decree of the rights of the parties." *Id.* at 80.

Similarly, in *Martin Marietta Corp. v. County of Madison (In re Penn-Dixie Indus., Inc.)*, 32 Bankr. 173 (Bankr. S.D. N.Y. 1983), the court confirmed a debtor's amended Chapter 11 plan, which incorporated the terms of an earlier tax order providing for payment of pre-petition real property tax claims over six years. The claims were originally secured by liens and held by Iowa counties. In spite of the tax order and the order confirming the amended plan, to which the counties neither objected nor appealed from, the counties sought to sell debtor's real property post-confirmation. When enjoined in an adversary proceeding, the counties moved to reform the order confirming the plan, claiming status as lien creditors. The *Penn-Dixie* court noted that only one of the counties had filed a proof of claim and that it had been untimely and identified as "priority" with the word "secured" stricken. The court held that the counties were "now estopped from seeking to revise the payment scheme." *Id.* at 179. The court noted that the counties had not objected to the order confirming the plan and that "[t]o allow the counties to go forward with their motion now . . . would defeat the time-honored doctrine of *res judicata.*" *Id.* at 177.

In *Pennsylvania Iron and Coal Co. v. Good (In re Pennsylvania Iron and Coal Co.)*, 56 Bankr. 492 (Bankr. S.D. Ohio 1985), the defendant claimed he had a lien on the debtor's trailer. Under the debtor's confirmed plan, however, the defendant, who received notice of the petition and a copy of the disclosure statement, neither filed a proof of claim nor lodged an objection to the confirmation. Accordingly, defendant was treated as an unsecured creditor without priority. The court held that the claimed lien was relinquished under the plan, stating that "11 U.S.C. § 1141 precludes defendant from presently altering his treatment under the plan and from maintaining or enforcing any pre-confirmation lien." *Id.* at 494-95. The *Pennsylvania Iron* court also observed that "[i]nherent in any bankruptcy reorganization . . . is the fact that the original contractual expectations of creditors will not be fulfilled." *Id.* at 496. Upon confirmation, therefore, the "defendant became bound by the provi-

sions of that plan." *Id.* at 495. *See also In re American Properties, Inc.*, 30 Bankr. at 246; *In re Fischer*, 91 Bankr. 55 (Bankr. D. Minn. 1988); Hopper, *Confirmation of a Plan Under Chapter 11 of the Bankruptcy Code and the Effect of Confirmation on Creditors' Rights*, 15 Ind. L.Rev. 501, 514-15 (1982).

We believe that a confirmed Chapter 11 plan defines the creditors' claims and any pre-confirmation rights of the creditors survive only to the extent that they are accounted for in the confirmed plan.

We acknowledge authority to the contrary holding that a lien creditor's status cannot be affected by a bankruptcy proceeding, but a close reading of the seminal case, *In re Tarnow*, 749 F. 2d 464 (7th Cir. 1984), leads us to conclude that it does not conflict with our decision here. In *Tarnow*, the Seventh Circuit Court of Appeals concluded that the bankruptcy and district courts erred when they permitted a Chapter 11 debtor to extinguish the lien of a pre-petition secured creditor. The Circuit Court examined Code § 506(d)(1) and reasoned that the statute "make[s] clear that the failure of the secured creditor to file a proof of claim is not a basis for avoiding the lien of the secured creditor." *Id.* at 467, *quoting* S. Rep. No. 65, 98th Cong., 1st Sess. 79 (1983). The court concluded that

> [t]he basis for disallowing the Corporation's claim was not that the Corporation was not a genuine secured creditor of the bankrupt but that its claim against the bankrupt estate—that is, its claim to be an unsecured creditor for so much of Tarnow's debt as could not be realized from the sale of the crops and equipment on which the Corporation had a lien—had been filed too late. . . . The validity of the lien was not determined in this case.

*Id.* at 466. The rationale of *Tarnow*, that a secured creditor cannot be deprived of its lien status where the debtor merely moves successfully to expunge the creditor's claim for late filing, is grounded upon due process requirements and is supported by Code § 506(d)(2), which simply provides that a creditor's failure to file a claim does not affect its lien status. We do not take issue with this logic, flowing as it does from a lien's status as a property right to which due process attaches. *See United States v. Security Indus. Bank*, 459 U.S. 70, 75-78 & n. 6, 103 S.Ct. 407, 410-12 & n. 6, 74 L.Ed.2d 235, 240-43 & n. 6 (1982). However, we observe that *Tarnow* arose

solely in the context of proof of claim litigation and had nothing to do with the effect of the confirmation of a Chapter 11 plan. On this record, *Tarnow* is not persuasive.

*Artic Enterprises, supra,* is more closely analogous on its facts and circumstances. Here, BB&T filed a proof of claim and was listed as a secured creditor. However, BB&T failed to list as part of its security the potential proceeds of the life insurance policy on one of the debtors, Dr. Thompson. The plan did not provide for continuing the lien on that policy and it was therefore extinguished under Code § 1141.

For the reasons stated, we reverse and remand the case for entry of judgment in favor of the appellant, Mrs. Thompson.

Reversed and remanded.

Judges PHILLIPS and ORR concur.