**In re Patsy Lee GLAD, dba Patsy's Management Service, Debtor.**

**UNITED STATES of America, Defendant/Appellant,**

**v.**

**Patsy Lee GLAD, Plaintiff/Appellee.**

**BAP No. CC–85–1502–VAbMe. Bankruptcy No. SA–84–00331–RP. Adv. No. SA–84–0393–RP.**

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued and Submitted April 16, 1986.

Decided Sept. 26, 1986.

---

Arthur M. Greenwald, Asst. U.S. Atty., Los Angeles, Cal., for defendant/appellant.

Cruz Saavedra, Long Beach, Cal., for plaintiff/appellee.

Before VOLINN, ABRAHAMS and MEYERS, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

The United States of America appeals a summary judgment entered by the bankruptcy court ordering that three certain parcels of real property listed on the debtor's schedules were free of any right, title or interest of the United States (Internal Revenue Service) arising from unpaid assessments made in the name of debtor's former husband.

We conclude that the debtor's former husband had a legal interest in the three parcels when the federal tax liens arose, which was not extinguished by a subsequent conveyance, and therefore reverse the bankruptcy court.

### I.

Patsy Lee Glad, the debtor-appellee, filed a voluntary petition under Chapter 11 on January 26, 1984. She filed a Proof of Claim on behalf of the United States with respect to her former husband's alleged federal income tax liabilities of $143,509.85 and a Complaint to Determine Validity of Federal Tax Lien. Her complaint alleged that she owned three certain parcels of real property (referred to as the Kanola residence and adjacent Kanola lot in Los Angeles County, and the Kraemer lot in Orange County), and that her former husband, Godoy Glad, held no right, title or interest in these three parcels to which federal tax liens, which had been recorded, could attach.

Both the debtor and the United States, the appellant, filed motions for summary judgment. The bankruptcy court entered summary judgment in favor of the debtor.

### II.

There is no dispute as to the facts, which may be summarized as follows.

Patsy and Godoy Glad were married on June 10, 1972 and began living "separate and apart" on Nov. 12, 1976.

A Marital Settlement Agreement executed by Patsy and Godoy on August 7, 1978, transferred the three parcels, characterized as community property, to Patsy upon the condition that she loan $70,000 to Godoy by Oct. 3, 1978. However, the Interlocutory Judgment of Dissolution of Marriage ("Interlocutory Decree"), which was entered Oct. 3, 1978, awarded the three parcels to Patsy without any mention of the $70,000 loan requirement. On Oct. 12, 1978, Patsy recorded three "Grant Deeds" conveying each parcel to her as her sole and separate property, but she did not make the $70,000 loan. The Final Judgment of Dissolution of Marriage ("Final Decree"), which was entered Jan. 5, 1979, adopted the Interlocutory Decree. Neither the Interlocutory nor the Final Decree was appealed.[1]

Godoy Glad, not having received the loan, took action in two different forums. First, in December 1978, between the time the Interlocutory and Final Decrees were entered, he filed partition actions in Los Angeles County and Orange County Superior Courts concerning the three parcels, claiming a breach of the $70,000 loan condition. He also recorded notices of *lis pendens*. Second, in July 1979, apparently while his partition actions were still pending, he moved the Orange County Superior Court in the marital dissolution action to transfer the three parcels back into "joint" ownership until the $70,000 loan condition was met.

The Orange County Superior Court judge issued a minute order on July 27, 1979 requiring Patsy Glad to execute deeds putting the property "back in tenancy in common," and restraining both parties from encumbering any of the three parcels.[2] That same day, Patsy Glad executed three "Grant Deeds" conveying each parcel to Godoy Glad and herself as tenants in common. The Orange County deed was recorded on July 27, 1979 and the two Los Angeles County deeds were recorded on July 30, 1979. The minute order was not appealed.

Thereafter, the United States made the following assessments against Godoy Glad for unpaid taxes:

| Assessment Date | Tax Liability |
| --- | --- |
| July 30, 1979: | Unpaid 1978 federal income tax, due on April 15, 1979, after marriage dissolved |
| Oct. 15, 1979: | Unpaid 1977 federal income tax, due on April 15, 1978, before marriage dissolved |
| June 15, 1981: | Unpaid W/T/FICA tax for the First Quarter of 1981, due after marriage dissolved |

The bankruptcy court found that Godoy Glad's federal income tax liabilities are based upon his 1977 and 1978 earnings and allowable expenses that were generated while he and Patsy Glad were living separate and apart with no present intent to resume marital relations.

Notices of Federal Tax Lien were duly recorded.

In March 1982, Patsy Glad delivered to Godoy Glad three checks totaling $70,000 in exchange for his promissory note, secured by deeds of trust to other real property. Godoy Glad and Patsy Glad, as tenants in common, then conveyed the three parcels back to Patsy Glad by "Individual Grant Deeds," which were recorded in April 1982. On April 20, 1982, Patsy Glad and Godoy Glad, through their respective attorneys, stipulated in the marital dissolution case that "all executory provisions of the Interlocutory Judgment of Dissolution of Marriage ... have been complied with."

The bankruptcy court entered findings of fact consistent with the facts set forth above. Among its 25 conclusions of law were the following:

That pursuant to the Interlocutory and Final Decrees, "Godoy Glad was divested of all property right, title or interest in

---

**1.** The Interlocutory Decree provided that the parties had waived their right to appeal. ¶ 14.

**2.** This minute order was apparently amended *nunc pro tunc* on Jan. 18, 1980 by another minute order requiring Patsy to execute deeds

transferring the property "back into joint ownership." The pertinent deeds in the record on appeal, however, use the terminology "tenants in common."

and to the three parcels of real property therein awarded to Patsy Lee Glad";

The dissolution court was without jurisdiction on July 27, 1979 to modify its prior decrees, which had specifically awarded the three parcels to Patsy Glad without condition as to the $70,000 loan;

Because the dissolution court lacked jurisdiction, its July 27, 1979 reconveyance order is not *res judicata* as to the rights of Patsy Glad against the United States, and is subject to collateral attack;

The deeds Patsy Glad executed on July 27, 1979 "transferred no property or rights to property to Godoy Glad to which federal tax liens could attach"; and

The interest of the United States in the three parcels "can rise no higher than Godoy Glad's interest which was merely a right to a $70,000 loan."

### III.

#### A.

The threshold question in this appeal is whether Godoy Glad had any legal interest in the three parcels when the federal tax liens arose, or at any time thereafter. The reason for such inquiry is that the amount of any unpaid tax becomes a lien in favor of the United States only "upon all property and rights to property, whether real or personal, *belonging to such person* [delinquent taxpayer]." 26 U.S.C. § 6321 (emphasis added).

■ The lien arises at the time the assessment is made. 26 U.S.C. § 6322. In this case, the liens arose on July 30, 1979; Oct. 15, 1979; and June 15, 1981. Each lien attaches to all property and rights to property belonging to the taxpayer *"at any time* during the period of the lien, including any property or rights to property acquired by such person after the lien arises." Treas.Reg. § 301.6321–1 (emphasis added). Once the lien arises, it continues until the liability for the amount assessed is satisfied, or becomes unenforceable by reason of lapse of time. 26 U.S.C. § 6322.

■ State law is determinative of the existence and nature of the property rights against which a tax lien has been asserted. *Aquilino v. United States*, 363 U.S. 509, 512–13, 80 S.Ct. 1277, 1279–80, 4 L.Ed.2d 1365 (1960); *Rodriguez v. Escambron Devel. Corp.*, 740 F.2d 92, 97 (1st Cir.1984). The Internal Revenue Code "creates no property rights but merely attaches consequences, federally defined, to rights created under state law ..." *United States v. Bess*, 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958); *accord United States v. National Bank of Commerce*, 472 U.S. 713, 105 S.Ct. 2919, 2925, 86 L.Ed.2d 565 (1985). Once the tax lien attaches, then the effects of that lien are a matter of federal law. *United States v. Rodgers*, 461 U.S. 677, 683, 103 S.Ct. 2132, 2137, 76 L.Ed.2d 236 (1983); *Rodriguez, supra.*

#### B.

■ We begin by asking whether the Interlocutory and Final Decrees disposed of the three parcels. The United States contends that on each assessment date, the three parcels were "unadjudicated and undistributed community property" in which Godoy Glad retained a one-half interest. It argues that the $70,000 loan was a condition precedent to Patsy Glad acquiring the parcels as her separate property which was not satisfied until March 1982, at which time the parcels appropriately became Patsy Glad's separate property, but still subject to the federal tax liens which had already attached and were not extinguished by the reconveyance.

Patsy Glad contends that on each assessment date, Godoy Glad held no interest in the three parcels. The Interlocutory Decree did not condition the award of the parcels to Patsy Glad upon her making a loan, and Godoy Glad neither objected to, nor appealed from, the Interlocutory or Final Decrees. The loan condition was, at best, a contract right/obligation between the parties, enforceable only by a separate action to seek relief, not by seeking to

modify the unconditional award of community property.

We have examined the Agreement and the Decrees and conclude that the Decrees disposed of the three parcels by unconditionally awarding them to Patsy Glad as her sole and separate property. Unlike most "failure to dispose of property" cases, the three parcels were not omitted from the decrees. The dissolution court had the community property of the parties before it, and the court divided that property, including the three parcels, without imposing any condition in the decrees. Although the $70,000 loan may have been a condition precedent to *Godoy Glad's* agreement to transfer his one-half interest in the three parcels to Patsy Glad, the dissolution *court* did not impose any requirement of a loan upon its award, which became final after no appeal was taken. No party to a dissolution action can impose restrictions on the court's award of property in a document that may be outside of the public record. The award of property in a dissolution action is the sole province of the court itself. Had the Agreement been incorporated or "merged" with the decrees—such that the "condition precedent" of Godoy Glad became the "condition precedent" of the dissolution court—then a different inference might be warranted. There is no basis for such an inference here. *See In re Marriage of Lane*, 165 Cal.App.3d 1143, 211 Cal.Rptr. 262 (1985).

### C.

However, circumstances changed on July 27, 1979, when the Orange County Superior Court judge ordered Patsy Glad to execute deeds of reconveyance, and she complied, without appealing the order. The execution, recording, and delivery[3] of those deeds—by which she conveyed the three parcels to Godoy Glad and herself as tenants in common—transferred a property

interest to Godoy Glad to which federal tax liens could attach.

Patsy Glad's primary argument on appeal is that the July 27, 1979 order constituted an impermissible modification of the property division. She contends that because the court lacked jurisdiction to modify the property division, its order was void and therefore no property rights flowed to Godoy Glad. The only case she cites to support this contention is *Burtnett v. King*, 33 Cal.2d 805, 205 P.2d 657 (1949). There, a default divorce decree had awarded certain real property to the wife, and she subsequently conveyed the property to others. The former husband sought to quiet title as against the transferees to his undivided one-half interest in the property, which had been the community property of the couple. The California Supreme Court reversed a judgment that quieted title in the transferees and was based solely on the ground that the divorce decree awarding the community property to the wife was *res judicata* of her separate ownership. The grounds for the reversal were that the husband had had no notice that his property rights would be adjudicated by a default judgment. Nothing was said by the court as to the validity or invalidity of the deeds that the wife must have executed in order to convey the property to the transferees, beyond saying that the judgment quieting title was reversed.

■ We do not have to reach the issue of whether the July 27, 1979 order modified the property division. Regardless of the court's jurisdiction, the fact remains that Patsy Glad executed deeds transferring the property out of her sole ownership to Godoy Glad and herself as tenants in common. She did not appeal the order that she now tries to collaterally attack, even though the transcript of the July 27, 1979 hearing re-

---

**3.** California law provides that "A grant takes effect, so as to vest the interest intended to be transferred, only upon its delivery by the grantor." Cal.Civ.Code § 1054. The parties have not raised any issue as to delivery. The bankruptcy court found that the three parcels were "trans-

ferred," and concluded that the three deeds were "delivered." It appears from the three deeds, which are in the record on appeal, that they were recorded at the request of Godoy Glad's counsel, and therefore delivery may be presumed.

flects that her counsel was aware of the problem with tax authorities.[4]

## IV.

Assuming *arguendo* that Godoy Glad held an interest in the three parcels at the time of the federal tax assessments, Patsy Glad makes three alternative arguments.

■ Her first argument is that even if the liens arose, they were extinguished in 1982 by Godoy Glad's and her reconveyance of the three parcels to herself alone. It is a well-known rule that the rights of the government are never greater than those of the taxpayer. *See, e.g.,* 9 J. Mertens, *The Law of Federal Income Taxation* § 54.52 (1982 rev.). However, once a federal tax lien has attached itself to an interest in property, "the lien cannot be extinguished (assuming proper filing and the like) simply by a transfer or conveyance of the interest." *United States v. Rodgers,* 461 U.S. 677, 691 n. 16, 103 S.Ct. 2132, 2141, n. 16, 76 L.Ed.2d 236, (1983), citing 26 U.S.C. § 6323 and *United States v. Bess, supra,* 357 U.S. at 57, 78 S.Ct. at 1058. "The transfer of property subsequent to the attachment of the lien does not affect the lien, for 'it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere ..'" *United States v. Bess, supra,* at 57, 78 S.Ct. at 1058, quoting from *Burton v. Smith,* 38 U.S. (13 Pet.) 464, 483, 10 L.Ed. 248, 257 (1839). *See also* J. Chommie, *The Law of Federal Income Taxation,* § 307 at 924–25 (2d ed.1973). Therefore, the liens were not extinguished in 1982.

■ Patsy Glad also argues that even if the liens were not extinguished, her interest is superior because she was "first in time" (in 1978) as against the United States, and because she was a "purchaser" under 26 U.S.C. § 6323(a) and (h)(6), and therefore in a protected class. Her "first in time" argument ignores the fact that Godoy Glad reacquired a property interest in the three parcels in 1979, just before the tax assessments, and therefore Patsy Glad was not "first in time." We do not need to reach the issue of whether Patsy Glad was a "purchaser" because that argument ignores the fact that the statute provides federal tax liens are valid against purchasers once notice is properly filed. *See* 26 U.S.C. § 6323(a). There is no dispute that these federal tax liens were properly filed and that Patsy Glad had notice of them. Therefore, when Godoy Glad reconveyed his interest to Patsy Glad in 1982, she took that interest subject to the federal tax liens that had already attached.

■ Finally, Patsy Glad argues that the United States lost its rights, if any, to collect the unpaid tax by failing to file an action to enforce its lien, pursuant to 26 U.S.C. § 7403, before 1982. The Internal Revenue Code provides for a 6–year collection period, which can be extended, 26 U.S.C. § 6502, or suspended, 26 U.S.C. § 6503.[5] Patsy Glad does not contend that the period for collection has run, but only that such an action should have been brought sometime between 1979 and 1982, when Godoy Glad held title to the three parcels with her. However, the United States has the ability to join as parties "all persons ... claiming any interest in the property." 26 U.S.C. § 7403(b). It was therefore not restricted to bringing such an action only when Godoy Glad had title to the property.

## V.

■ The United States raises an additional issue concerning Patsy Glad's own interest in the three parcels. The government attempts to distinguish the Oct. 15, 1979 assessment from the other two as-

---

4. The transcript of the July 27, 1979 hearing reflects that when Godoy Glad's counsel offered up deeds for Patsy Glad to sign, her counsel responded: "The problem with them is then the tax authorities would put a lien against those properties." The court responded: "So be it."

5. One reason for suspension concerns cases under Title 11 of the United States Code. *See* 26 U.S.C. § 6503(i). We note that the record shows that Godoy Glad filed his own Chapter 11 bankruptcy petition on December 27, 1982.

sessments on the grounds that it was a "personal, non-community obligation" that Godoy Glad "incurred during the marriage" because it came due on April 15, 1978, before the marriage was dissolved. The government contends that the federal tax lien arising from that assessment encumbers *both* Godoy Glad's and *Patsy Glad's* interests in their community property, "including any award of community property acquired by Patsy Glad through divorce."

We reject the government's contention. The very statute under which this lien is imposed restricts its imposition to property "belonging to such person," i.e., the "person liable to pay any tax." 26 U.S.C. § 6321. There is no dispute that only Godoy Glad is liable for the tax. Therefore, only his property can be reached.[6]

### CONCLUSION

We hold that although Patsy Glad's own one-half interest in the three parcels is free and clear of any federal tax liens for Godoy Glad's separate debt, the one-half interest she acquired from Godoy Glad in 1982 is subject to the preexisting liens, of which she had notice.

The bankruptcy court's summary judgment in favor of the debtor Patsy Glad is REVERSED.

---

**6.** The two main cases upon which the government relies are distinguishable. The first is *Babb v. Schmidt,* 496 F.2d 957 (9th Cir.1974), which does not concern a former wife's liability for a debt that was specifically awarded to the husband under a final marital dissolution decree. The second case is *Wikes v. Smith,* 465 F.2d 1142 (9th Cir.1972), which does not concern a federal tax lien arising under 26 U.S.C. § 6321. Moreover, California law has changed since *Wikes* was decided. *See* Calif.Civ.Code § 5120.150(a)(2).