**In re Alan K. JUNES and Cynthia M. Junes, Debtors.**

**Alan K. JUNES and Cynthia M. Junes, Appellants,**

v.

**UNITED STATES GOVERNMENT (Internal Revenue Service), Appellee.**

**BAP No. OR 87–1724–AsMoJ.**
**Bankruptcy No. 386–04572–H13.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Sept. 16, 1988.

Decided June 8, 1989.

Leonard H. Beasley, Portland, Or., for appellants.

David Hubbert, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for appellee.

Before ASHLAND, MOOREMAN and JONES, Bankruptcy Judges.

## OPINION

ASHLAND, Bankruptcy Judge:

### FACTS

On August 28, 1986, the debtors Alan and Cynthia Junes filed a petition under Chapter 13 of the Bankruptcy Code. The debtors listed the Internal Revenue Service as an unsecured creditor in the amount of $36,529 for unpaid taxes accrued in 1980 and for penalties and interest on all the taxes due and as a priority creditor for the years 1983 through 1985 in the amount of $10,271. The debtors did not schedule the IRS as a secured creditor. The debtors did not provide for the IRS's secured claim in the reorganization plan confirmed on October 27, 1986. When the debtors filed this petition, they had real and personal property amounting to $8,405.

On September 29, 1986, the IRS filed a proof of claim for income tax, penalties, and interest, alleging that the debtors were indebted to the United States in the amount of $46,882.50. The United States' claim stated that the amounts owing were secured with the exception of $121.44 of tax and $43.22 of interest.

On October 17, 1986, the debtors filed an objection to the IRS's designation of its entire claim as secured. The debtors' plan provided, as required under 11 U.S.C. § 1322(a)(2) and § 507, for the full payment of all priority claims, and nothing for the unsecured creditors. The debtors proposed to allow the IRS's claim as a priority claim

in the amount of $9,160.91 and as a nonpriority claim in the amount of $37,721.59.

At the hearing on the objection to the IRS's claim, the IRS asserted that it was entitled to treat the 1980 taxes (nonpriority) as secured claims to the extent of available security ($8,405 of debtor's real and personal property). However, the debtors, while acknowledging the IRS's tax lien in the amount of $8,405 took the position that they were entitled to allocate the payment of the priority claims to extinguish the tax lien against the debtors' real and personal property.

The bankruptcy court held that $8,405 of the IRS's claim was an allowed secured claim, and $11,986.62 was an allowed priority claim. In the memorandum opinion, the court stated that the priority payments to be made by the debtors pursuant to the confirmed Chapter 13 plan, were involuntary payments, and therefore the IRS could elect to apply those payments in any manner it chose to maximize the collection of tax revenue from the estate, 76 B.R. 795 (Bank.Or.1987). The debtors appeal from this opinion.

### ISSUES

1. Whether a debtor may apply the post-confirmation payments on priority tax claims to extinguish a federal tax lien in a Chapter 13 case, when the tax lien is not provided for in the plan of reorganization.

2. Whether a federal tax lien survives bankruptcy unaffected if it is neither avoided nor provided for in the plan.

### STANDARD OF REVIEW

We review the bankruptcy court's conclusions of law under a *de novo* standard. *Ragsdale v. Haller,* 780 F.2d 794, 795 (9th Cir.1986).

### DISCUSSION

A taxpayer who makes a voluntary payment to the IRS may designate how the payment will be allocated to satisfy the taxpayers' liabilities. *In re Technical Knockout Graphics, Inc.,* 833 F.2d 797, 801 (9th Cir.1987); *In re Ribs–R–Us, Inc.,* 828 F.2d 199, 201 (3rd Cir.1987). *See also* Rev.Rul. 79–284, 1979–2 C.B. 83, *modifying* Rev.Rul. 73–305, 1973–2 C.B. 43, *superceding* Rev.Rul. 58–239, 1958–1 C.B. 94. However, when the payment is involuntary, the IRS may designate which of the taxpayers' liabilities will be satisfied by the payment. *Slodov v. United States,* 436 U.S. 238, 252, n. 15, 98 S.Ct. 1778, 1788, n. 15, 56 L.Ed.2d 251 (1978); *Technical Knockout,* 833 F.2d at 801; *Ribs–R–Us,* 828 F.2d at 463. *See also* IRS Policy Statement P–5–60, IRS Manual (May 30, 1984). "The IRS is entitled to allocate tax payments from [a] ... debtor in a manner that maximizes its ability to fully recover taxes owed." *Ribs–R–Us,* 828 F.2d at 204.

The IRS relies heavily on *Technical Knockout,* 833 F.2d 797 (9th Cir.1987). In *Technical Knockout,* the Chapter 11 debtor defaulted on payment of corporate income, social security and income withholding taxes. Prior to confirmation of the plan, the debtor sought to make payments on the IRS's claims in order to escape personal liability, which is imposed on those responsible for collecting and forwarding the trust[1] funds to the IRS. *Id.* at 798–99. The court held that: "payment made by a debtor in possession after filing a petition for reorganization under Chapter 11, but *prior to confirmation* of a reorganization plan, are involuntary and the bankruptcy court does not have equitable jurisdiction to order otherwise." *Id.* at 802 (emphasis added).

The IRS also cites, *Matter of Ribs–R–Us, Inc.,* 828 F.2d 199 (3rd Cir.1987), which was relied on by the *Technical Knockout* court and applies the voluntary—involuntary analysis to a Chapter 11 post-confirmation payment. In *Ribs–R–Us,* the IRS's priority tax claims were to be paid out over the maximum six-year period under the plan. The plan also provided for the payments to

---

1. Congress imposed personal liability on any officer or employee of the employer responsible for executing the collection and payment of the trust fund taxes who "willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully defeat any such tax or the payment thereof." 26 U.S.C. § 6671(a).

be allocated first to decrease the secured trust fund portion of the IRS's claim, then to the remaining claims. The court concluded that "payment[s] to the IRS on prepetition priority tax liabilities by the debtor in reorganization under Chapter 11 of the Bankruptcy Code are involuntary and therefore cannot be allocated by the debtor" to pay trust-fund liabilities. *Id.* at 204.

In *Technical Knockout*, the debtor sought to allocate preconfirmation payments to extinguish personal liability for trust fund claims. In *Ribs–R–Us*, the debtor wished to make an allocation of post-confirmation payments of its priority tax claim to reduce the debtors' non-priority tax liabilities (trust fund personal liabilities). *Ribs–R–Us*, 828 F.2d at 200. In this case, the debtors did not provide for the IRS's tax lien in the plan, nor did the Chapter 13 plan provide any designation for the allocation of payments. Further, under the debtor's plan, the debtors did not have any other non-priority tax liabilities to which they could allocate their post-confirmation payments of priority tax claims. The debtors' plan provided for unsecured creditors to receive nothing on their claims and did not provide for the IRS' secured claims. Therefore, discussion of voluntary versus involuntary payments does not apply here. The issue, simply stated is whether a federal tax lien that was not avoided or provided for under the plan survives the bankruptcy proceedings.

■■■ Under Section 6321 of the Internal Revenue Code, if a taxpayer neglects or refuses to pay any federal tax after demand, a lien is created in favor of the United States on "all property and rights to property, whether real or personal, belonging to such person." I.R.C. § 6321 (1986). The federal tax lien continues until there is payment on the taxes it secures or the statute of limitations runs on the collection of such lien. *See also In re Isom*, 95 B.R. 148 (9th Cir.BAP 1988). *See* I.R.C. §§ 6322, 6502(a) (1986). The federal tax lien extends over all property or interests in property belonging to the taxpayer. *In re Barbier*, 77 B.R. 799, 802 (Bankr.D.Nev. 1987). *See* Duncan & Lyons, *Federal Tax Liens and the Secured Party*, 21 U.C.C.L. J. 3, 4 (1988).

In *United States v. Bass*, 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958), the Supreme Court explained that the federal tax lien "creates no property rights, but merely attaches consequences, federally defined, to rights created under state law." "State law is determinative of the existence and nature of the property rights against which a tax lien has been assessed." *In re Glad*, 66 B.R. 115, 118 (9th Cir.BAP 1986) (*citing Aquilino v. United States*, 363 U.S. 509, 512–13, 80 S.Ct. 1277, 1279–80, 4 L.Ed.2d 1365 (1960); *Rodriguez v. Escambron Devel. Corp.*, 740 F.2d 92, 97 (1st Cir.1984). "Once the tax lien attaches, then the effects of that lien are a matter of federal law." *In re Glad*, 66 B.R. at 118 (*citing United States v. Rodgers*, 461 U.S. 677, 683, 103 S.Ct. 2132, 2137, 76 L.Ed.2d 236 (1983); *Rodriguez*, 740 F.2d at 97).

The debtors' failure to provide for the IRS's tax lien in the Chapter 13 plan and to provide for the allocation of payments allows the IRS's tax lien to survive the bankruptcy process. "[A] Chapter 13 debtor with a confirmed plan cannot force the cancellation of liens." *In re Herbert*, 61 B.R. 44, 47 (Bankr.W.D.La.1986) (*citing In re Simmons*, 765 F.2d 547, 556 (5th Cir. 1985).

In *In re Tarnow*, 749 F.2d 464 (7th Cir. 1984), the Seventh Circuit held that even if a secured creditor fails to file a timely proof of claim, and is therefore not provided for in the Chapter 11 plan, the secured creditor's lien survives the bankruptcy proceedings unaffected. The *Tarnow* court acknowledged the long line of cases permitting "a creditor with a loan secured by a lien on the assets of a debtor who becomes bankrupt before the loan is repaid to ignore the bankruptcy proceeding and look to the lien for satisfaction of the debt." *Id.* Similarly, in *In re Simmons*, 765 F.2d at 556, the Fifth Circuit held that "[i]t is clear under the Code that any statutory lien that is valid under state law remains valid through the bankruptcy unless invalidated by some provision of the Code."

Under Section 1327(c), property of the estate is vested in the debtor free of a creditor's interest as long as the creditor's interest is provided for in the plan. 11

U.S.C. § 1327(c). *See* 5 L. King, *Collier on Bankruptcy,* ¶ 1327.01, at 1327–9 (15th ed. 1988). The Fifth Circuit stated that:

'there appears to be no sound reason for lifting liens by operation of law at confirmation under Chapter 13.' (quoting *Collier on Bankruptcy,* ¶ 1327.01[3], at 1327–5). Nor are we able to discern any reason for such an effect. Therefore, we agree with the *In re Honaker* court's conclusion that '[t]he reading of section 1327 urged by [the debtor] would have the Debtor materially improve his financial position, unencumbering [secured] assets, through the simple expedient of passing his property through the estate.' (quoting *In re Honaker,* 4 B.R. 415, 417 (Bankr.E.D.Mich.1980).

*Simmons,* 765 F.2d at 555. In *In re Work,* 58 B.R. 868 (Bankr.D.Or.1986), the bankruptcy court held that when a Chapter 13 plan fails to provide for a lien on the debtor's property held by another party, confirmation does not vest the property in the debtor free of the lien.

Furthermore, the legislative history under Section 506(d) provides that: [s]ubsection (d) "permits liens to pass through the bankruptcy case unaffected." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 357 (1977); *reprinted in* U.S.Code Cong. & Admin.News 1978, pp. 5787, 6313. *See also* 5 L. King, *Collier on Bankruptcy,* ¶ 506.07 at 506–70 (15th ed. 1989). In *Simmons,* the court recognized that the Code and the legislative history provide that "when a party in interest has not requested that the court determine and allow or disallow a claim under section 502, a lien cannot be void." *Simmons,* 765 F.2d at 557. "Simply put, under § 506(d), liens pass through bankruptcy unaffected unless challenged in some way." *In re O'Leary,* 75 B.R. 881, 885 (Bankr.D.Or.1987).

This panel agrees with the *O'Leary* court that in cases "involving no express provision of a Chapter 13 plan proposing to avoid the lien ... [a] compelling case [can be made] for upholding the clear congressional intent to permit liens to pass through a bankruptcy case unaffected." *Simmons,* 765 F.2d at 558. In this case, the debtors did not take any steps in the plan or otherwise, to avoid the tax lien;

therefore, the tax lien survives the bankruptcy proceeding unaffected. In accordance with the Congressional intent that liens, unless avoided, survive bankruptcy unaffected, we hold that the IRS's tax lien survives the bankruptcy proceeding unimpaired. "The [debtor's personal] liability may be discharged in bankruptcy ... [but] the tax lien remains in force. Thus the ... liability [on the debtor's] property remains enforceable ..." *In re Isom,* 95 B.R. at 151. "The discharge of [the debtors'] personal liability ... to [the IRS] does not effect the right of the [IRS] to enforce its lien against the debtor's real [and personal] property once the automatic stay provided by § 362 [has] terminated." *In re Work,* 58 B.R. at 873.

## CONCLUSION

The debtors may not fail to provide for the IRS's tax lien in their Chapter 13 reorganization plan and expect that lien to be extinguished by the bankruptcy process. The judgment of the bankruptcy court is affirmed. The debtors are not entitled in this case to decide how their payments of priority tax claims are to be applied. The IRS's tax lien survives the bankruptcy proceeding and may be enforced to satisfy the IRS's 1980 tax claim.