# United States Court of Appeals

## For the First Circuit

No. 06-2327

IN RE CAPITOL FOOD CORP. OF FIELDS CORNER,

Debtor,

FIELDS STATION LLC.,

Appellant,

v.

CAPITOL FOOD CORP. OF FIELDS CORNER,

Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Boudin, Chief Judge,

Cyr and Stahl, Senior Circuit Judges.

John C. La Liberte, with whom Pamela Zorn Adams and Sherin and Lodgen LLP were on brief for appellant.
Andrew M. Osborne, with whom David J. Fonte and Osborne & Fonte were on brief for appellee.

June 6, 2007

**CYR**, **Senior Circuit Judge**.  The corporate owner of commercial premises upon which its lessee sought to reorganize under chapter 11 and reopen as a food market appeals from the bankruptcy court judgment which denied the motion to dismiss the chapter 11 petition on the ground that it was not filed in good faith.  We affirm.

## I

In 1965, the Fields Station Realty Trust ("Fields Station") leased a commercial retail property in Dorchester, Massachusetts, to Supreme Fields Corner, Inc.  Rentals under the lease ("Lease") were – and remain – well below prevailing market rates.  The Lease permitted Fields Station to terminate the leasehold within thirty days should Supreme Fields cease operating a business – viz., a food market – on the premises.  In 1996, Capitol Food Corporation of Fields Corner, Inc. ("Capitol Food") succeeded to Supreme Fields' interests as lessee.

In 2005, Capitol Food ceased operating the food market itself, and subleased the store to Ethnic and American Foods, Inc. d/b/a America's Food Basket ("AFB").  AFB operated a market on the premises until December 26, 2005, when it closed its doors and filed a chapter 7 petition.  On December 27, Fields Station sent Capitol Food a written notice, citing AFB's closure of the market as an event of default under the Lease, and inviting Capitol Food to cure the default by January 26, 2006 or forfeit its leasehold.

-2-

Capitol Food promptly decided to resume its own operation of a market on the leased premises. During January 2006, it purchased AFB's sublease interests in the Property from the chapter 7 trustee in the AFB bankruptcy case, and agreed to purchase the market's existing equipment and inventory from one of AFB's secured creditors. Capitol Food also applied to the city for the necessary operating and health permits. However, since it was unable to reopen the market by the Fields Station January 26 deadline, Capitol Food filed a voluntary chapter 11 reorganization proceeding on January 27, expressly to avert forfeiture of its lucrative leasehold. Capitol Food has continued to make timely rent payments to Fields Station. Within two weeks of its chapter 11 filing, Capitol Food obtained the operating and health permits, and reopened the food market.

Fields Station promptly submitted a motion to dismiss the Capitol Food chapter 11 petition, see 11 U.S.C. § 1112(b) (authorizing dismissal of petitions for "cause"), or for relief from the automatic stay, see id. § 362(d)(1) (same, "for cause"), alleging that the Capitol Food petition had been filed in bad faith and for an improper purpose.

After a non-evidentiary hearing, the bankruptcy court denied both Capitol Food motions, holding, inter alia, that section 1112(b) contains no good faith filing requirement, and that Fields Station failed to establish "cause" for relief from the automatic

-3-

stay because Capitol Food did not utilize the chapter 11 filing for any improper purpose. Fields Station appealed the bankruptcy court orders denying its subsection 1112(b) and 362(d) motions to the district court, which summarily affirmed.

## II

### A.

On appeal from an intermediate district court affirmance, we review de novo the bankruptcy court's legal conclusions, its findings of fact for clear error, In re Watman, 458 F.3d 26, 31 (1st Cir. 2006), and its refusal to dismiss a bankruptcy petition or to grant relief from the automatic stay only for abuse of discretion, Howard v. Lexington Invs., Inc., 284 F.3d 320, 322 (1st Cir. 2002); In re Soares, 107 F.3d 969, 977 (1st Cir. 1997).

### B.

The Bankruptcy Code prescribes that the bankruptcy court may dismiss a chapter 11 case for "cause." 11 U.S.C. § 1112(b)(1). Fields Station initially posits that a finding that Capitol Food filed its chapter 11 petition in "bad faith" is sufficient "cause" for a § 1112(b) dismissal. The courts are not in agreement as to this legal proposition, compare, e.g., In re Integrated Telecom Express, Inc., 384 F.3d 108, 118 (3d Cir. 2004) (embracing good faith filing requirement), cert. denied, 545 U.S. 1110 (2005), with In re Victoria Ltd. P'ship, 187 B.R. 54, 61-62 (Bankr. D. Mass.

-4-

1995) (rejecting the proposition),[1] and the issue remains one of first impression in this circuit, cf. In re Coastal Cable T.V., Inc., 709 F.2d 762, 764-65 (1st Cir. 1983) (merely observing that the Code imposes a generalized duty of good faith, and citing 11 U.S.C. § 1129(a)(3), which expressly requires that a reorganization plan be "proposed in good faith").

Although the bankruptcy court held that subsection 1112(b) imposes no good faith filing requirement, we need not address this matter in the present case. Even the courts which have found a good faith filing requirement would demand that Fields Station first make a prima facie showing that Capitol Food filed its petition in bad faith, see, e.g., In re Paolini, 312 B.R. 295,

---

[1]The courts which endorse a good faith filing requirement primarily observe that it comports with the equitable roots of bankruptcy law, by ensuring, from the earliest stages of a bankruptcy case, that the debtor's genuine need for bankruptcy protection outweighs the burden and delay to creditors occasioned by the chapter 11 proceedings. See, e.g., Integrated Telecom, 384 F.3d at 119. The courts which reject the requirement observe, inter alia, that: (i) § 1112(b) expressly provides adequate alternate mechanisms for weeding out bad faith chapter 11 petitions by expressly listing several criteria warranting dismissal for "cause" (e.g., the debtor's failure to propose a viable chapter 11 plan in good faith), 11 U.S.C. § 1112(b)(4)(A)-(P), yet conspicuously omits mention of any good faith filing criterion; and (ii) "good faith" is too vague and amorphous a term to justify dismissal ab initio of a chapter 11 petition before the debtor has had a fair opportunity to propose and argue for the bona fides of its reorganization plan. See Victoria Ltd. P'ship, 187 B.R. at 61-62. In the same vein, Capitol Food notes that the Bankruptcy Abuse Prevention and Consumer Protection Act, Pub. L. 109-8, 119 Stat. 23 (2005), recently included in the Code an explicit "good faith" definition in § 362(c)(3)(B), (C) (provisions to discourage multiple bankruptcy filings by same debtor within one-year period), but did not so amend § 1112(b).

-5-

305 (Bankr. E.D. Va. 2004) (observing that the moving party must make a prima facie showing of bad faith before the burden of proving good faith shifts to debtor), and the appellate record reveals that Fields Station has made no such preliminary demonstration.

## C.

Although Fields Station acknowledges the fact-intensive nature of the good faith question, In re Marsch, 36 F.3d 825, 828 (9th Cir. 1994), it suggests that the two matters particularly pertinent to its appeal are whether the Capitol Food petition "serves a valid reorganizational purpose," and whether the petition was filed "merely to obtain tactical litigation advantages." In re SGL Carbon Corp., 200 F.3d 154, 163, 165 (3d Cir. 1999).

Even the case authority cited by Fields Station refutes its allegation that Capitol Food submitted its chapter 11 petition in bad faith. Fields Station relies primarily on the fact that Capitol Food admitted that it was solvent at the time it filed its chapter 11 petition, see 11 U.S.C. § 101(32) (providing definition of "insolvent"), therefore had the ability to pay its unsecured debts without liquidating its business assets, thus had no present need for bankruptcy protection in January 2006.

"A debtor need not be insolvent before filing a bankruptcy petition," however, provided it is experiencing "some type of financial distress." Integrated Telecom, 384 F.3d at 122

-6-

("The absence of an insolvency requirement encourages companies to file for Chapter 11 before they face a financially hopeless situation.") (emphasis added); SGL Carbon, 200 F.3d at 165-66 ("When financially troubled petitioners seek a chance to remain in business, the exercise of those [bankruptcy] powers is justified."); In re Liberate Techs., 314 B.R. 206, 211-12 (Bankr. N.D. Cal. 2004) (same); see also Coastal Cable, 709 F.2d at 765 (noting that a "good faith" plan of reorganization "must bear some relation to the statutory objective of resuscitating a financially troubled corporation"). Catastrophic business events, such as an imminent or threatened foreclosure on the debtor's interests in real property essential to successful reorganization efforts, are precisely the sort of imminent financial distress for which debtors routinely seek chapter 11 protection. See Liberate Techs., 314 B.R. at 216 (citing In re Sylmar Plaza, L.P., 314 F.3d 1070, 1075 (9th Cir. 2002) (finding no "bad faith" filing where debtor filed chapter 11 petition to avoid incurring prohibitive lease penalties)). Two primary purposes of chapter 11 relief are the preservation of businesses as going concerns, and the maximization of the assets recoverable to satisfy unsecured claims. See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship, 526 U.S. 434, 453 (1999). Upon the abrupt closure of the AFB market in December 2005, Capitol Food was deprived of its principal source of cash flow (viz., the sublease rental payments receivable),

-7-

whereupon Capitol Food legitimately opted to reconvert itself – from a non-operational sublessor to a market operator – thereby preserving for the business the going concern value of both the below-market-rate leasehold and the store's existing equipment and inventory. Since "'going-concern value is likely to be higher than liquidation value,'" Integrated Techs., 384 F.3d at 121 (citation omitted), a successful reorganization in turn can maximize the value of the assets available to settle the outstanding claims of unsecured creditors. If the reorganization succeeds, and a steady cash flow is restored, everyone wins: the debtor, creditors, employees, and shareholders.

Importantly, Fields Station has not contended that the Capitol Food reorganization would have been viable even if Capitol Food were forced to pay prevailing market rates on the Lease. Where the Capitol Food non-monetary default under the Lease threatened to extinguish its lucrative leasehold, and the loss of that leasehold would have doomed its bona fide reorganization efforts, it had a present need for chapter 11 protection to avoid business disruption and economic dismemberment. See id. at 129 (noting that a "good faith" petition "must seek to create or preserve some value that would otherwise be lost . . . outside of bankruptcy"); In re James Wilson Assocs., 965 F.2d 160, 170 (7th Cir. 1992) ("It is not bad faith to seek to gain an advantage from declaring bankruptcy – why else would one declare it?").

"The [§ 1112(b) good faith filing] inquiry often centers around the debtor's bona fide need for a breathing spell to reorganize." In re Original IFPC S'holders, Inc., 317 B.R. 738, 750 (Bankr. N.D. Ill. 2004). Congress intended that the filing of a chapter 11 petition and the coincident triggering of the automatic stay would afford debtors a "breathing spell" from "all collection efforts, all harassment, and all foreclosure actions." H.R. Rep. No. 95-595, at 340 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, at 6296-97 (emphasis added); 11 U.S.C. § 362(a)(6); In re Jamo, 283 F.3d 392, 398 (1st Cir. 2002); Soares, 107 F.3d at 975. As in the instant case, the "time-out" typically delimits a creditor's contractual rights against the debtor in order to advance the prospects for a successful reorganization:

> Filing a bankruptcy petition with the intent to frustrate creditors does not by itself "establish an absence of intent to seek rehabilitation." Indeed, because a major purpose behind our bankruptcy laws is to afford a debtor some breathing room from creditors, it is almost inevitable that creditors will, in some sense, be "frustrated" when their debtor files a bankruptcy petition. In reality, there is "a considerable gap between delaying creditors, on the eve of foreclosure, and the concept of abuse of judicial purpose."

In re Cohoes Indus. Terminal, Inc., 931 F.2d 222, 228 (2d Cir. 1991) (citations omitted).

In this regard, none of Fields Stations' case authorities prove to be factually apposite. Unlike Capitol Food, the debtors

-9-

in <u>Integrated Telecom</u> and <u>Liberate Technologies</u> did not file their chapter 11 petitions with intent to reorganize a financially distressed company as an operational business, but rather, with the declared intention to <u>sell</u> a fully solvent company, <u>viz.</u>, a business fully able to pay its unsecured claims as they came due. <u>See</u> <u>Integrated Telecom</u>, 384 F.3d at 120 ("Integrated is unquestionably 'out of business,' and therefore has no going concern value to preserve in Chapter 11 through reorganization or liquidation under the Bankruptcy Code."); <u>Liberate Techs.</u>, 314 B.R. at 217. In order to maximize the businesses' sales value, hence the financial return their <u>shareholders</u> would realize from their anticipated sales, the debtors sought to invoke a Bankruptcy Code provision that caps the amount a lessor may recover in future rents for the debtor's default under a lease, thereby making the leases' terms more valuable and attractive to prospective purchasers of the businesses. 11 U.S.C. § 506(b)(6); <u>Integrated Telecom</u>, 384 F.3d at 128 (noting that the establishment of a valid reorganizational purpose is a question "antecedent" to the right to invoke the § 506(b)(6) cap).

By contrast, the Capitol Food unsecured creditors are likely to benefit from the now-successful reorganization, since Capitol Food's operation of the food market has restored a reliable and adequate cash flow from which it can pay its past and ongoing debts to unsecured creditors, as well as continue its timely rental

payments to Fields Station under the Lease.[2]  Far from an unworthy purpose, this type of _bona_ _fide_ rehabilitative effort is among the most fundamental aims attendant upon chapter 11 protection.

As Fields Station has made no _prima_ _facie_ showing that Capitol Food submitted its chapter 11 petition in bad faith, we conclude that the bankruptcy court did not abuse its discretion in denying the Fields Station motion to dismiss the chapter 11 petition or relief from the automatic stay.

**Affirmed**.

---

[2]Fields Station predicated its bankruptcy court motions, at least in part, on allegations, based on media reports, that Capitol Food had a long history of mismanaging and neglecting the leased property (_e.g._, repeated health violations).  Given that many companies suffer financial distress precisely because of mismanagement, we do not perceive what relevance these allegations have to the question as to whether Capitol Food filed its chapter 11 petition in bad faith.  Rather, these allegations pertain principally to the prospects _vel_ _non_ that the plan proposed by Capitol Food would effect a successful rehabilitation.