**In re JE LIVESTOCK, INC., Debtor.**

**JE Livestock, Inc., Appellant,**

v.

**Wells Fargo Bank, N.A., Appellee.**

**BAP No. WY–06–127.**
**Bankruptcy No. 05–21009.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Sept. 24, 2007.

Stephen R. Winship of Winship & Winship, P.C., Casper, WY, for Appellant.

Terry W. Connolly (John C. Patton with him on the brief) of Patton & Davidson, Cheyenne, WY, for Appellee.

Before MICHAEL, NUGENT, and BROWN, Bankruptcy Judges.

## OPINION

NUGENT, Bankruptcy Judge.

Appellant JE Livestock, Inc. ("JE") appeals a stay modification order entered by the United States Bankruptcy Court for the District of Wyoming, granting Wells Fargo Bank, N.A.'s ("Wells Fargo") request to lift stay in order for it to proceed with foreclosure of JE's real estate. We AFFIRM.

## I. Appellate Jurisdiction

■ We have jurisdiction of this appeal. An order granting relief from the automatic stay is a final order subject to appeal under 28 U.S.C. § 158(a)(1).[1] The Appellant timely filed its notice of appeal.[2] The parties have consented to this Court's jurisdiction because they have not elected to have the appeal heard by the United States District Court for the District of Wyoming.[3]

## II. Standard of Review

■ We review a bankruptcy court's determination of "cause" under Section

---

1. *Franklin Sav. Ass'n v. Office of Thrift Supervision*, 31 F.3d 1020, 1022 n. 3 (10th Cir. 1994).

2. Fed. R. Bankr.P. 8002(a).

3. 28 U.S.C. § 158(b)-(c); Fed. R. Bankr.P. 8001(e).

362(d)(1) for an abuse of discretion.[4] "Under the abuse of discretion standard: 'a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'"[5] An abuse of discretion, however, may occur when a ruling is premised on an erroneous conclusion of law or on clearly erroneous fact findings.[6] We review the bankruptcy court's conclusions of law de novo.[7] "When an appellate court reviews a [trial] court's factual findings, the abuse-of-discretion and clearly erroneous standards are indistinguishable...."[8]

### III. Factual Background

JE is an agricultural corporation and had a mortgage with Wells Fargo. In November of 2004, JE defaulted and Wells Fargo initiated foreclosure proceedings. After Wells Fargo obtained a default judgment, JE filed for Chapter 11 bankruptcy on May 23, 2005.[9]

JE scheduled Wells Fargo's debt on Schedule D, listing Wells Fargo as a secured creditor with a total claim of $220,234 and a deficiency claim of $16,584 on real property valued at $203,650. On Schedule A, however, JE listed the value of its real property at $80,750. JE did not indicate that Wells Fargo's claim was disputed, unliquidated, or contingent.

The deadline to file a proof of claim was September 19, 2005. Wells Fargo did not file a proof of claim.

On February 10, 2006, JE amended its Schedule D by changing the stated value of its real property to $124,750. JE also filed a Chapter 11 plan, proposing to treat Wells Fargo as having an allowed secured claim of $96,500 and a $116,360 unsecured deficiency claim. Wells Fargo objected to JE's Amended Disclosure Statement and plan, disputing JE's valuation of its real property and its classification of Wells Fargo as a partially unsecured creditor.

On June 20, 2006, the bankruptcy court held a confirmation hearing on JE's Chapter 11 plan. The bankruptcy court heard evidence regarding the value of JE's real property. On July 11, 2006, the bankruptcy court issued an order (1) denying confirmation of JE's proposed plan for failing to satisfy the absolute priority rule and (2) setting the value of JE's real estate at $410,000.[10] The July 11, 2006, order has never been appealed.

On August 25, 2006, Wells Fargo filed a "Motion to Modify Stay and Notice of Time to Object,"[11] seeking modification of the stay to permit it to repossess and foreclose its security interest in JE's real property, inventory, accounts, equipment, crops, and livestock pursuant to 11 U.S.C. § 362(d)(1).[12] Wells Fargo claimed that

---

**4.** *Franklin Sav. Ass'n,* 31 F.3d at 1023.

**5.** *Moothart v. Bell,* 21 F.3d 1499, 1504 (10th Cir.1994) (quoting *McEwen v. City of Norman,* 926 F.2d 1539, 1553–54 (10th Cir.1991)).

**6.** *Kiowa Indian Tribe v. Hoover,* 150 F.3d 1163, 1165 (10th Cir.1998).

**7.** *Elder v. Holloway,* 510 U.S. 510, 516, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994).

**8.** *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 401, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

**9.** Appellant's Appendix ("App.") at 13–20.

**10.** *Order on Confirmation of [February 10, 2006] Chapter 11 Plan, in* App. at 21–24.

**11.** *Wells Fargo's Motion to Modify Stay and Notice of Time to Object, in* App. at 25–27.

**12.** All future references to "Section" or "§" are to the Bankruptcy Code, Title 11 of the United States Code unless otherwise indicated.

JE filed this case in bad faith to avoid paying Wells Fargo, there was no progress and much delay in this case (*i.e.*, after 15 months, a plan had still not been confirmed), and the delay was prejudicial to Wells Fargo. JE objected to Wells Fargo's motion to modify stay, contending any delay was merely caused by negotiations. JE also argued that because Wells Fargo failed to file a proof of claim, its claim was not only deemed allowed in the amount scheduled, but that its allowed secured claim was deemed allowed in an amount equal to the value of the real property that JE scheduled.

Wells Fargo's August 25, 2006, motion stated an objection deadline of September 8, 2006. The debtor timely objected on September 6. On September 8, 2006, the bankruptcy court entered an order (1) scheduling a preliminary hearing on Wells Fargo's motion for September 28, 2006, (2) finding that Wells Fargo had waived the 30–day hearing requirement of § 362(e), and (3) ordering that the automatic stay remain in effect until the conclusion of a final hearing.[13] In that order, the court specifically found that Wells Fargo had waived the 30–day requirement of § 362(e). Moreover, Wells Fargo at no time invoked the § 362(e) period, either in the bankruptcy court or on appeal.[14]

On September 28, 2006, the bankruptcy court held a preliminary hearing on Wells Fargo's motion to modify stay and heard oral arguments.[15] JE argued that stay relief would disrupt ongoing negotiations. Noting that JE had been ordered to file a plan by September 29, 2006, the bankruptcy court set the matter over for a final hearing to allow "time for progress."[16] The bankruptcy court issued an order scheduling the final hearing on November 14, 2006, after again "finding that the movant has waived the 30–day hearing requirement of 11 U.S.C. § 362(e)...."[17]

On October 10, 2006, JE filed an Amended Chapter 11 plan.[18] The amended plan proposes to allow Wells Fargo's secured claim at $203,650, the value stated on JE's original Schedule D and to classify part of Wells Fargo's claim as unsecured.

The bankruptcy court held the final hearing on Wells Fargo's motion to modify stay on November 14, 2006. The parties submitted stipulated exhibits and made oral arguments. On November 17, 2006, the bankruptcy court issued its ruling and granted Wells Fargo's motion, essentially

---

**13.** *See Docket No. 87 in Docket Report, in* App. at 8. A copy of this order was not provided in the App.

**14.** *See J.H. Streiker & Co., Inc. v. SeSide Co., Ltd. (In re SeSide Co., Ltd),* 155 B.R. 112, 116 (E.D.Pa.1993) (Implied waiver may be found where a creditor's actions are clearly inconsistent with an intention to insist on its rights.); *Borg–Warner Acceptance Corp. v. Hall,* 685 F.2d 1306, 1308 (11th Cir.1982) (implied waiver where creditor not only failed to object to the absence of preliminary hearing but also attended the final hearing beyond thirty day period without objection); *In re McNeely,* 51 B.R. 816, 821 (Bankr.D.Utah 1985) (implied waiver where creditor failed to schedule final hearing within thirty day period); *In re Small,* 38 B.R. 143, 147 (Bankr.

D.Md.1984) (implied waiver of thirty day requirement where creditor filed discovery request to which responses were due beyond the thirty day period); *In re Wilmette Partners,* 34 B.R. 958, 961 (Bankr.N.D.Ill.1983) (implied waiver where creditor agreed to continuance of preliminary hearing beyond thirty day time period).

**15.** *Minutes of [9/28/06] Proceedings, in* App. at 87.

**16.** *Id.*

**17.** *See Order Scheduling Hearing,* attached to Appellant's Reply Br.

**18.** *Amended Plan of Reorganization, in* App. at 102.

ruling that cause existed to lift the stay because JE "has attempted every means to avoid proposing a chapter 11 plan that will pay Wells Fargo's over-secured claim...." The bankruptcy court noted the debtor's "unwillingness to propose a plan that incorporates the very collateral valuation that the Debtor sought from the court." It also noted that JE had threatened to devalue the property by cutting off water rights to the property.[19] The court buttressed these conclusions with a determination that the amended plan would be unconfirmable because, by ignoring the court-determined valuation of the collateral, JE did not propose to pay Wells Fargo's secured claim as required by §§ 1129(b)(2)(A)(i) and 506(a).

On appeal, JE argues that because Wells Fargo failed to file a proof of claim, its claim is deemed allowed in the amount scheduled and that the value of its real property is also deemed to be what JE placed in its schedules. Under this theory, JE argues that its amended plan is confirmable and that Wells Fargo failed to establish cause to grant stay relief. This argument is rife with flaws as discussed below.

## IV. Discussion

### 1. JE's "scheduled valuation" theory is based on a fallacy.

█ JE devoted much of its brief and oral argument to its assertion that when a creditor fails to file a proof of claim in a Chapter 11 case, not only its claim, but also its allowed secured claim are "deemed allowed," essentially causing the value of the secured creditor's collateral to be controlled by the debtor's schedules. JE contends that the bankruptcy court erred by relying upon a valuation order rather than its schedules when it lifted the stay based in part upon its conclusion that JE's amended plan could not be confirmed.[20] JE argues that a valuation under § 506 does not substitute for or alleviate the necessity of filing a proof of claim for plan confirmation process.

The bankruptcy court concluded that:

a debtor's valuation asserted in the schedules does not fix the value of the collateral for purposes of an allowed secured claim. Section 1111(a) cannot be read so broadly as to preclude a court from exercising its discretion under § 506(a) to determine the amount of a creditor's allowed secured claim based on the value of the collateral. Indeed, the Debtor has offered no authority for the proposition that § 1111(a) somehow overrides § 506(a), or that § 1111(a) does anything more than establish the existence of a claim.[21]

We agree. There is no support for JE's argument that its valuation of the collateral in its schedule controls when a creditor fails to file a proof of claim. The flaw in this position is that, while § 1111(a) deems allowed a scheduled claim that is not contingent, unliquidated or disputed, nothing in the Code or Rules provides for the deemed allowance of an allowed secured claim under § 506(a). The Code and Rules contemplate a separate process for the valuation of a secured creditor's collateral under § 506(a) and Federal Rules of Bankruptcy Procedure 3012. The claims allowance process is not intended to deal with secured claim valuation under § 506(a).[22] Moreover, JE's "scheduled

---

**19.** *Order on Motion to Modify Stay* at 2–3, *in* App. at 163–64.

**20.** Appellant's Br. at 6.

**21.** *Order on Motion to Modify Stay* at 5, *in* App. at 165.

**22.** *See In re Duggins,* 263 B.R. 233, 238 (Bankr.C.D.Ill.2001) (The bifurcation or valu-

valuation" theory would encourage debtors to set a trap for unwary creditors. Conceivably, if a debtor sets the value of the collateral in its schedule at $1 and the creditor failed to file a proof of claim, the creditor is bound by that value. Such a result is unpalatable. Nothing in the Bankruptcy Code or Rules indicates an intent to permit a creditor to be bound by the collateral value stated in a debtor's schedule.

## 2. The bankruptcy court did not abuse its discretion in finding cause to grant stay relief.

Section 362(d) provides that a bankruptcy court "shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—1) for cause, including the lack of adequate protection of an interest in property of such party in interest ..." As this Court has previously noted:

> While cause under § 362(d)(1) includes "the lack of adequate protection of an interest in property," it is not so limited. 11 U.S.C. § 362(d)(1). Because "cause" is not further defined in the Bankruptcy Code, relief from stay for cause is a discretionary determination made on a case by case basis.[23]

Among the factors to be considered in determining whether the automatic stay should be modified for cause are the good or bad faith of the debtor and the injury to the movant if the stay is not modified.[24] As one judge has eloquently stated:

The totality of the circumstances of a case encompasses, among other things, how the parties have conducted themselves, their good or bad faith, and their motives. Good faith is an intrinsic and integral component of the bankruptcy process.[25]

JE argues that its failure to file a confirmable plan does not constitute "bad faith" cause for relief from stay under § 362(d)(1), but is, instead, a basis for relief from stay under § 362(d)(2). Since Wells Fargo's request from relief of stay was based on § 362(d)(1), JE contends the bankruptcy court erred when it based its ruling on (d)(2) grounds. This argument misses the point of the bankruptcy court's ruling which was *not* that the debtor would be unable to effectively reorganize, but that the debtor's repeated reliance on its own valuation rather than that determined by the court at the debtor's request was one example of the debtor's lack of good faith in prosecuting the Chapter 11 case. Therefore, it was well within the bounds of permissible choice for the bankruptcy court to conclude that cause existed to grant stay relief under § 362(d)(1).

In its conclusions of law, the bankruptcy court referred to debtor's delay of the case, its bad faith as evidenced in part by its proposed treatment of Wells Fargo's claim, and its failure to propose a plan that treated the Wells Fargo claim consistent with the court's valuation order. We think these conclusions are warranted by the record. As the bankruptcy court noted,

---

ation process contemplated by § 506(a) is not properly part of the claims allowance process.).

**23.** *In re Busch*, 294 B.R. 137, 140 (10th Cir. BAP 2003) (citing *Pursifull v. Eakin*, 814 F.2d 1501, 1506 (10th Cir.1987)).

**24.** *In re A Partners, LLC*, 344 B.R. 114, 127 (Bankr.E.D.Cal.2006). *See also In re Superior*

*Siding & Window, Inc.*, 14 F.3d 240, 242 (4th Cir.1994).

**25.** *In re Mack*, 347 B.R. 911, 915 (Bankr. M.D.Fla.2006), citing *Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1071 (5th Cir.1986).

(1) this is not a complex case as it involves a single creditor dispute, (2) this case has been pending for 18 months, which is longer than necessary to propose a confirmable plan, (3) JE proposed a Chapter 11 plan only after being ordered to do so by the court, (4) JE did not amend the Chapter 11 plan until the court, once again, ordered it to do so, and (5) JE has made little or no progress in payment of the debt. JE's bad faith is evidenced by (1) its inconsistent valuations of the collateral, (2) its threats to devalue the property, and (3) proposing an amended plan that once again ignores the bankruptcy court's valuation. JE's filing an unconfirmable·plan, standing alone, may not constitute cause under § 362(d)(1), but its headstrong persistence in filing a plan that utterly disregards a judicial finding of value under § 506(a), particularly after taking inconsistent positions as to the value of the collateral and after receiving the court's valuation ruling, does. Filing the amended plan based on a faulty value premise previously rejected by the bankruptcy court exhibits disregard, if not disdain, for the bankruptcy court's orders and authority. The bankruptcy court's comments show that it clearly believed debtor to be willfully uncooperative:

> The Debtor has attempted every means to avoid proposing a chapter 11 plan that will pay Wells Fargo's over-secured claim, including threats to the status of the collateral, statements of the collateral's value that are inconsistent among themselves, and an unwillingness to propose a plan that incorporates the very collateral valuation that the Debtor sought from the court.[26]

We should, and do, defer to the views of the bankruptcy judge, who has experienced the debtor and this case "on the ground," unless the court's actions are somehow beyond the bounds of permissible choice. It is clear here that they are not.

### 3. Wells Fargo waived the operation of Section 362(e).

At oral argument, the Court inquired of the parties about the fact that a preliminary stay relief hearing was not convened until after the expiration of 30 days. The Wells Fargo motion was filed on August 25, 2006, but the first hearing on the matter did not occur until September 28, 2006. Section § 362(e) provides that, upon expiration of 30 days after the motion is filed, the stay is terminated unless the court orders that it continue pending the conclusion of the final hearing and a ruling thereon. The September 6, 2006, order contained a finding that the movant had waived the 30–day deadline. After the preliminary hearing on September 28, 2006, the bankruptcy court entered a further order delaying the final hearing on the motion until November 14, 2006, and finding again that Wells Fargo had waived the § 362(e) deadline. Section 362(e) does not afford us an independent basis to conclude that the stay terminated in this case.

Based on the record in this case, we do not have a definite and firm conviction that the bankruptcy court abused its discretion by making a clear error of judgment or exceeded the bounds of permissible choice under these circumstances. JE's persistence in filing a plan that fails to acknowledge the court's valuation of the collateral, taken with JE's other actions in the case, constitute sufficient cause under § 362(d)(1).

### V. Conclusion

Finding no error, the decision of the bankruptcy court to lift stay is AFFIRMED.

---

**26.** *Order on Motion to Modify Stay* at 4, *in* App. at 164.

BROWN, Bankruptcy Judge, concurring.

I agree with the Majority that the bankruptcy court did not err in overruling the Debtor's objection to stay relief to the extent it was based on its argument that it had proposed a confirmable plan. The Debtor argued that no cause existed for granting relief because the amended plan on file properly treated Wells Fargo's claim as only partially secured. It defended its proposed treatment of Wells Fargo on the basis that it had failed to file a proof of claim before the claims bar date. It then argued that the failure to file a proof of claim means that its schedules determined the amount of Wells Fargo's claim and its lien status.

The Debtor relies on 11 U.S.C. § 1111(a), which states:

A proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that appears in the schedules filed under section 521(1) or 1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent, or unliquidated.

This section only specifies that an uncontested, scheduled claim has the same effect as a filed proof of claim. The statute does not purport to address the question of a creditor's lien status when the creditor has failed to file a proof of claim and the claim is unscheduled.

The Debtor is correct in its assumption that the failure to file a claim limited Wells Fargo's right to participate in a distribution from the estate. Because the Debtor listed Wells Fargo as a partially secured creditor, recognizing a deficiency claim, § 1111(a) provides that Wells Fargo is deemed to have filed a proof of claim against the estate only to the extent reflected in the schedules. But the Debtor then assumes that this limits Wells Fargo's lien status. There is a certain logic to

this reasoning. If the Debtor's liability is limited or eliminated under these circumstances, then should Wells Fargo's lien value be reduced or eliminated to correspond with the amount of debt, if any, that remains owing by the Debtor? Outside of the bankruptcy world this would be the case. For example, if a debtor owes $50,000 on a house worth $100,000, the bank's interest in the house is limited to $50,000. If the debtor repays the mortgage in full, then Wells Fargo has no further right to assert its lien status.

But a long line of cases, from the Supreme Court on down, have held that the bankruptcy process does not abrogate a secured creditor's lien rights.

A long line of cases, though none above the level of bankruptcy judges since the Bankruptcy Code was overhauled in 1978, allows a creditor with a loan secured by a lien on the assets of a debtor who becomes bankrupt before the loan is repaid to ignore the bankruptcy proceeding and look to the lien for the satisfaction of the debt. See *Long v. Bullard*, 117 U.S. 617, 620–21, 6 S.Ct. 917, 918, 29 L.Ed. 1004 (1886); *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 582–83, 55 S.Ct. 854, 859–60, 79 L.Ed. 1593 (1935); *United States Nat'l Bank v. Chase Nat'l Bank*, 331 U.S. 28, 33, 67 S.Ct. 1041, 1044, 91 L.Ed. 1320 (1947) (dictum); *In re Woodmar Realty Co.*, 307 F.2d 591, 594–95 (7th Cir.1962); *Dizard & Getty, Inc. v. Wiley*, 324 F.2d 77, 79–80 (9th Cir.1963); *Clem v. Johnson*, 185 F.2d 1011, 1012–14 (8th Cir.1950); *DeLaney v. City and County of Denver*, 185 F.2d 246, 251 (10th Cir.1950); *In re Bain*, 527 F.2d 681, 685–86 (6th Cir.1975); *In re Honaker*, 4 B.R. 415, 416 and n. 3 (Bankr. E.D.Mich.1980); cf. *In re Rebuelta*, 27 B.R. 137, 138–39 (Bankr.N.D.Ga.1983);

*In re Hines,* 20 B.R. 44, 48 (Bankr. S.D.Ohio 1982).

*In re Tarnow,* 749 F.2d 464, 465 (7th Cir. 1984). "Unless the collateral is in the possession of the bankruptcy court or the trustee, the secured creditor does not have to file a claim." *Hoxworth v. Blinder,* 74 F.3d 205, 210 (10th Cir.1996) (citing *Tarnow,* 749 F.2d at 465). If a court specifically ruled that a particular creditor's debt is unenforceable or the lien invalid, then such a ruling would change this result. But the mere failure to participate in the bankruptcy proceedings does not have the effect of limiting or invalidating the secured creditor's lien rights. In fact, in enacting § 506(d)(2), Congress codified this longstanding judicial interpretation.

> [I]n 1984 Congress enacted a new section 506(d)(2), replacing the former 506(d)(1), and the new section preserves the lien if the claim "is not an allowed secured claim due only to the failure of any entity to file a proof of such claim...." Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 93–353, § 448(b), 98 Stat. 374. The change was intended "to make clear that the failure of the secured creditor to file a proof of claim is not a basis for avoiding the lien of the secured creditor." S.Rep. No. 65, 98th Cong., 1st Sess. 79 (1983).

*Matter of Tarnow,* 749 F.2d 464, 467 (7th Cir.1984).

The Debtor's proposed treatment of Wells Fargo caused its plan to be unconfirmable on its face. One of the requirements of confirmation is that a plan be "fair and equitable." 11 U.S.C. § 1129(b)(2). In pertinent part, § 1129(b)(2)(A) defines "fair and equitable" with respect to secured claims as follows:

> (2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
>
> (A) With respect to a class of secured claims, the plan provides—
>
> (i) (I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and
>
> (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property[.]

Subsection 1129(b)(2)(A)(i)(II) allows a plan proponent to essentially write a new loan. But the payment terms of the new loan must meet certain criteria: (1) deferred cash payments; and (2) the stream of payments must "[total] at least the allowed amount of such claim, of a value, as of the effective date of the plan." *Id.* This language requires a present value analysis. 7 *Collier on Bankruptcy* ¶ 1129.05[2][a] at 1129–143 (Alan N. Resnick ed. 15th ed. rev.2007).

This subsection further requires that the stream of payments be "of at least the value of such holder's interest in the estate's interest in such property." 11 U.S.C. § 1129(b)(2)(A)(i)(II). The estate's interest in this case is that of an owner of the property. The bankruptcy court valued the ownership interest at $410,000. Thus, the Debtor's plan must pay the present value of the full amount owed to Wells Fargo, up to this valuation amount. The valuation of Wells Fargo's interest in the property is controlled by § 506, not § 1111(a). The Debtor's interpretation of § 1111(a) contradicts § 506(d)(2).

Even if the Debtor's objection to stay relief was not well-founded, Wells Fargo had the initial burden of going forward with evidence to establish "cause." *In re Anthem Cmtys./RBG, LLC,* 267 B.R. 867, 870–71 (Bankr.D.Colo.2001). To satisfy this burden, Wells Fargo offered as its only evidence eight exhibits: its judgment obtained in state court, certain of the Debtor's schedules, the two plans proposed by the Debtor, and a summary of its calculation of the debt owed by the Debtor. While its motion had asserted that the bankruptcy case had been filed in bad faith, it did not offer any evidence to this effect. Instead it argued at hearing that the amended *plan* had been filed in bad faith. Likewise, the bankruptcy court held that the amended *plan* had been filed in bad faith. It did not find, nor could it have found *based on the evidence presented,* that the *case* had been filed in bad faith.[1]

Courts are not in agreement as to whether a bad faith filing is sufficient cause for either dismissal under § 1112(b) or stay relief under § 362(d)(1). *See In re Capitol Food Corp. of Fields Corner,* 490 F.3d 21, 24 (1st Cir.2007) (citing cases on both sides of this issue). The Tenth Circuit has previously recognized "cause" for granting stay relief based on a case filed in bad faith. *In re Nursery Land Dev., Inc.,* 91 F.3d 1414, 1415–16 (10th Cir.1996). There may be some room to doubt the continued vitality of this doctrine following Congress' adoption of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), Pub.L. No. 109–8, 119 Stat. 23 (2005), which recently included in the Code an explicit "good faith" requirement in § 362(c)(3)(B), (C). It did not amend either § 1112(b) or § 362(d) to include lack of "good faith" as an addition-

al basis for a finding of "cause." While neither section purports to contain an exclusive list of reasons for finding "cause," the absence of any reference to "good faith" may be indicative of Congressional intent. However, this case was filed before the effective date of BAPCPA and, in any event, it is not necessary to reach this issue in this case.

Even if bad faith continues to be grounds for stay relief, it requires a showing of bad faith in the filing of the petition. The Tenth Circuit has stated that "classic badges of a bad faith bankruptcy filing" include when the debtor:

(1) has only one asset; (2) has only one creditor; (3) acquired property which was posted for foreclosure and the prior owners had been unsuccessful in defending against the foreclosure; (4) was revitalized on the eve of foreclosure to acquire the insolvent property; (5) has no ongoing business or employees; and (6) lacks a reasonable possibility of reorganization, and (7) the Charter 11 filing stopped the foreclosure. *See Jones v. Bank of Santa Fe (In re Courtesy Inns, Ltd.),* 40 F.3d 1084, 1090 (10th Cir.1994)(upholding sanctions for bad faith Chapter 11 filing where one-asset debtor lacking ability to reorganize filed for bankruptcy one day before foreclosure on asset); *Laguna Assocs. Ltd. Partnership v. Aetna Casualty & Sur. Co. (In re Laguna Assocs. Ltd. Partnership),* 30 F.3d 734, 738 (6th Cir.1994) (listing indicia of bad faith Chapter 11 filing); *Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.),* 779 F.2d 1068, 1072–73 (5th Cir.1986) (same).

*In re Nursery Land Dev., Inc.,* 91 F.3d 1414, 1416 (10th Cir.1996). In upholding

---

1. For example, the Majority observes that there is evidence of bad faith in part based on the Debtor's threats to devalue the property. *See* Majority Opinion at 898. The bankruptcy court received no evidence at the stay hearing to support such a finding.

the court's finding of bad faith in *Nursery Land,* the Tenth Circuit relied on *Laguna Associates Ltd. Partnership v. Aetna Casualty & Surety Co. (In re Laguna Associates Ltd. Partnership),* 30 F.3d 734, 738 (6th Cir.1994), which adopted a substantially similar list of factors for a court to consider, adding that

> "no list is exhaustive of all the conceivable factors which could be relevant when analyzing a particular debtor's good faith." *In re Caldwell,* 851 F.2d 852, 860 (6th Cir.1988); *see also In re Barrett,* 964 F.2d 588, 591 (6th Cir.1992) ("Our circuit's good faith test requires consideration of the totality of circumstances.").

*Laguna Assocs.* at 738, *cited in Nursery Land,* 91 F.3d at 1416. While these factors are non-exclusive, the court is nevertheless required to make findings as to a bad faith filing of the petition. In this case, the bankruptcy court did not do so. The Majority reaches for facts that would support such a finding. But the issue is not whether the bankruptcy court could have made a bad faith finding. It is whether it actually did make such a finding and whether there was evidence admitted to support the finding.

Both the Majority and the bankruptcy court's ruling are grounded in a perception that the Debtor has exhibited "headstrong persistence in filing a plan that utterly disregards a judicial finding of value under § 506(a) . . ." *See* Majority Opinion at 898. I think this misses the Debtor's point. The Debtor was not attempting to value the real estate differently. It was asserting a new legal theory for a different treatment of Wells Fargo's claim. The bankruptcy court had not previously ruled on the significance of Wells Fargo's failure to file a proof of claim.

It is well established that a finding of "cause" under § 362(d)(1) is reviewed under the abuse of discretion standard. *Franklin Sav. Ass'n v. Office of Thrift Supervision,* 31 F.3d 1020, 1023 (10th Cir. 1994). This is a very difficult, but not impossible, hurdle to surmount. A court abuses its discretion when it makes an error of law. *Koon v. United States,* 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). An appellate court may also assign abuse of discretion when it has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice. *Moothart v. Bell,* 21 F.3d 1499, 1504 (10th Cir.1994). This case takes me to the outer bounds of what is permissible choice.

The bankruptcy court's ruling rests on only two findings: (1) the amended plan had been proposed in bad faith; and (2) 18 months had elapsed since the filing of the case. Lack of prospects for reorganization is expressly included as grounds for stay relief in § 362(d)(2)(B). But before stay relief may be granted, this subsection requires the additional finding of a lack of equity in the property. 11 U.S.C. § 362(d)(2)(A). If "cause" under § 362(d)(1) can be read so broadly as to allow relief when only one of the two required elements of § 362(d)(2) is present, then § 362(d)(2) becomes superfluous. I recognize that "cause" is an amorphous doctrine. But it must have some limits.

Is an unconfirmable plan, coupled with an 18-month delay, grounds for "cause" to lift the stay? Is the delay by itself sufficient "cause"? Prior to BAPCPA, § 1112(b)(2), (3) provided that "inability to effectuate a plan" and "unreasonable delay by debtor that is prejudicial to creditors" were grounds for "cause" to dismiss or convert a Chapter 11 case. It may seem logical to suppose that what is cause under one statute should be cause under the other, especially when the remedy of stay relief appears to be less draconian than conversion or dismissal. But it is only less draconian when viewed from a debtor's

perspective. These two grounds affect all creditors, not only a secured creditor. Granting stay relief instead of conversion or dismissal favors one creditor at the expense of the other creditors. This might be why Congress had expressly provided that these were grounds for "cause" to convert or dismiss.

Nevertheless, courts hearing appeals of stay relief motions have ruled that lack of reorganization prospects coupled with delay may be grounds for "cause." *See Marine Midland Bank v. Breeden (In re Bennett Funding Group, Inc.)*, 255 B.R. 616, 638–39 (N.D.N.Y.2000) (recognizing that lack of necessity for reorganization alone was insufficient, but when coupled with delay it satisfied "cause"). The bankruptcy court's decision was driven, I believe, by a misunderstanding of the Debtor's intentions. However, I can locate no precedent to assign abuse of discretion to the grant of a lift of stay motion on the grounds of delay coupled with lack of progress in reorganization. Thus, with great reluctance, I concur in the result.